614 A.2d 999

**In re DUSTIN T.**

**No. 1949, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Oct. 29, 1992.

Robert M. McCarthy, Bethesda, for appellant.

Wendy J. Greenberg, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee, MCDSS.

Argued before MOYLAN, ALPERT and MOTZ, JJ.

ALPERT, Judge.

This is yet another tragedy that comes to us as a result of long-term drug abuse. Dustin T. was determined to be a child in need of assistance ["C.I.N.A."] by the District Court for Montgomery County (Moore, J., presiding). As a result, the court decided to keep the child in foster care because his mother, Ms. H., failed to demonstrate that she could provide a safe home for the child if he was returned to her. She has appealed and asks us to respond to the following questions:

 I. Did the court err in denying Ms. H.'s motion to dismiss the C.I.N.A. petition, which motion was based on our holding in *In re: William B.?*

 II. Does the preponderance of the competent evidence fail to support a finding that Dustin is a C.I.N.A.?

 III. Once Dustin was removed from Ms. H.'s home, did the lower court impermissibly shift the burden of proof away from the County to show the continued unfitness of Ms. H. to care for Dustin—thereby impermissibly placing the burden on Ms. H. to affirmatively show her fitness as a parent—before Dustin was returned?

 IV. Did the court err in allowing continuous irrelevant and hearsay evidence despite repeated objection?

We respond to each in the negative and, therefore, shall affirm the judgment of the trial court.

## FACTS AND PROCEEDINGS

In its "Detention C.I.N.A. Petition" filed on November 4, 1991, the Montgomery County Department of Social Services ["MCDSS"] *inter alia* alleged that Dustin T. was a child

in need of assistance [1] because (1) at his birth on October 28, 1991, both Dustin T. and his mother, Ms. H., tested positive for cocaine; (2) Ms. H. had a long history of drug abuse; (3) Ms. H. was using drugs just prior to Dustin's birth; and (4) Ms. H. associated with people who were "involved with drugs to the point that they were staying in her home."

A Shelter Hearing followed on November 4, 1991, and Dustin was committed to MCDSS for placement in temporary foster care. Ms. H. was granted visitation under the supervision of MCDSS.

On December 2, 1991, an adjudication hearing was conducted, wherein the court *inter alia* denied Ms. H.'s motion to dismiss the C.I.N.A. petition. Upon the testimony presented, the court found Dustin to be C.I.N.A. and continued the commitment to MCDSS for placement in temporary foster care, subject to supervised visitation between Dustin and his mother. The court further ordered that Ms. H. attend and actually participate in drug treatment.

On December 24, 1991, the Juvenile Court held a disposition hearing, in which *inter alia* the court (1) denied Ms. H.'s motion to alter or amend the court's prior order, and (2) committed Dustin for further placement in foster care.

In appealing the Juvenile Court's order, Ms. H. asked us to respond to the questions set forth above.

## THE LAW

### I.

Toward the beginning of the December 2, 1991 adjudication hearing, Ms. H. moved—ostensibly based on our holding in *In re William B.*, 73 Md.App. 68, 533 A.2d 16 (1987), *cert. denied*, 311 Md. 719, 537 A.2d 272 (1988)—to dismiss MCDSS's C.I.N.A. petition.

---

1. *See* Md.Cts. & Jud.Proc.Code Ann. art. ["CJ"] § 3–801(e), which defines a C.I.N.A.

Specifically, Ms. H. contended that *William B.* stands for the proposition that alcohol dependency alone is insufficient grounds for removal of a child from his home. Ms. H. now argues that because the only evidence presented by MCDSS at the juvenile court hearing related to Ms. H.'s drug addiction (which, Ms. H. argues, is analogous to alcohol dependency), the holding in *William B.* mandates that the court grant her motion to dismiss.[2]

In alleging that the court erred in denying this motion, Ms. H. makes essentially three specific factual contentions: (1) All of the allegations contained in the petition were impermissibly based on the actions of Ms. H. *prior* to Dustin's birth, (2) MCDSS failed to cite any facts to support its contention that Ms. H. is not able to provide to Dustin ordinary and proper care, and (3) MCDSS failed to adequately support the finding that Ms. H. ever abused or neglected the child.

We disagree with each of Ms. H.'s contentions.

#### A.

■ Pursuant to CJ § 3–812, a C.I.N.A. petition must set forth in clear and simple language the facts supporting the allegation that Dustin T. is a child in need of assistance. *Id.* at § 3–812(a). Pursuant to CJ § 3–801(e), quoted here in relevant part, a C.I.N.A. is

> a child who requires the assistance of the court because ... [h]e is ... not receiving ordinary and proper care and attention, and ... his parents are unable or unwilling to

---

2. As correctly noted by MCDSS in its brief before this court, although the issue raised by Ms. H. in Issue I of her brief is whether the juvenile court erred in denying her motion to dismiss the C.I.N.A. petition, nearly half of her argument related to motions she made *after* the adjudication, which post-adjudication motions she also more formally discussed in Issues II and III of her brief. Therefore, to the degree that her arguments in Issues II and III replicated those made in Issue I, our response to those arguments may also appear duplicative.

give proper care and attention to the child and his problems[.]

The department of social services must then present to the court the evidence in support of its petition. *Id.* at § 3-812(g).

With respect to Ms. H.'s first delineated contention, i.e., all of the allegations contained in the petition were impermissibly based on the actions of Ms. H. *prior* to Dustin's birth, the record simply does not support it. While it is true that the petition contains allegations relating to Ms. H.'s long history of drug use prior to Dustin's birth, the petition also sufficiently alleges facts concerning how Ms. H.'s drug use *affected* Dustin's birth, and how her drug use continued to affect her living conditions *after* Dustin's birth (up until the time the petition was filed). Among other things, the petition states:

> [F]ollowing Dustin's birth[,] Ms. H. and Dustin tested positive for cocaine. Investigation noted that Ms. H. has a long history of drug use and that she ... admitted to using drugs prior to Dustin's birth.... Ms. H. has acknowledged that she began using drugs again [i.e., after seeking treatment for her drug problem] and that she has [been] involved with ... people engaged in drug-related activities to the point that they were staying in her home. Ms. H. indicated that these people were no longer staying in her home, but reportedly, two men, one carrying a gun were seen leaving the home following an attempt by child welfare services staff to meet with Ms. H.'s roommate.

Moreover, it has been long since settled that a parent's past conduct is relevant to a consideration of his or her future conduct. *See, e.g., McCabe v. McCabe,* 218 Md. 378, 383, 146 A.2d 768 (1959) ("In making our decision [as to the future of the infant at issue] we should not gamble about that future. We can only judge the future by the past.").

Indeed, in *William B.,* the single most significant case upon which Ms. H. bases her present argument, we implicit-

ly affirmed such a doctrine. In *William B.* we held that "parents' [past] ability to care for the needs of one child is probative of their ability to care for other children in the family." *William B.*, 73 Md.App. at 77, 533 A.2d 16.

Relying upon past actions of a parent as a basis for judging present and future actions of a parent directly serves the purpose of the C.I.N.A. statute. As we noted in *William B.*,

> The judge need not wait until the child suffers some injury before determining that he is neglected. This would be contrary to the purpose of the C.I.N.A. statute. The purpose of the act is to protect children—not to wait for their injury.

*Id.* at 77–78, 533 A.2d 16.

Moreover, we are compelled to comment here upon the recent profusion of published medical studies that have expounded upon the dangers to a newborn of his or her mother's substance abuse during pregnancy. Indeed, birth defects linked to cocaine addiction—such as the addiction suffered by Ms. H.—include skull defects (such as exencephaly and encephaloccle), poor parietal bone formation, and urological malformations (such as hypospadias, hydroureter, and herniac). *See, e.g.,* Gilbody, *Effects of Maternal Drug Addition on the Fetus,* 10 Adverse Drug React. Acute Toxicol. Rev. 77 (1991).

Other jurisdictions have also recognized the significance and probative value of a mother's pre-natal drug activity. *See, e.g., Matter of Smith,* 128 Misc.2d 976, 492 N.Y.S.2d 331, 334–35 (Fam.Ct.1985) (a mother's use of drugs during the pregnancy can support a finding of neglect and that the mother would be "unable to adequately care for the child"; excessive use of drugs, prior to birth, would support a finding that a child was a "neglected child" on the theory that the parent would be unable to provide adequate care subsequent to birth); *Alfredo S. v. Nassau County D.S.S.,* 172 A.D.2d 528, 568 N.Y.S.2d 123, 126 (1991) (a child's testing positive for drugs at birth along with evidence of

the mother's repeated prenatal drug use is *prima facie* evidence of neglect); *Johnson v. State*, 578 So.2d 419, 420 (1991), *aff'd*, 601 So.2d 559 (Fla.1992) (mother who knowingly passes cocaine to her fetus through the umbilical cord is guilty of giving a controlled substance to a minor under Fla. statute); *In Re Ruiz*, 27 Ohio Misc.2d 31, 500 N.E.2d 935, 935–36, 939 (1986) (a finding that a child is abused [as defined by Ohio statute] may rest solely on the mother's prenatal conduct); *In Re Valerie D.*, 25 Conn.App. 586, 595 A.2d 922, 925 (1991) (a petition for neglect or termination of parental rights may be based solely on prenatal conduct of the mother); and *In Re Troy D.*, 215 Cal.App.3d 889, 899, 263 Cal.Rptr. 869 (1989) (prenatal drug use by a mother is probative of "future child neglect"); and *Matter concerning Baby X*, 97 Mich.App. 111, 293 N.W.2d 736, 739 (1980) (since prior treatment of one child can support neglect allegations regarding another child, prenatal treatment can be considered probative of a child's neglect as well; since a child has a legal right to begin life with a sound mind and body, it is within this best interest to examine all prenatal conduct bearing on that right.)

Ms. H.'s prenatal drug use, therefore, must be seen as being relevant to (although not necessarily determinative of) her ability to provide adequate care to Dustin. Thus, the petition was not impermissibly based solely on allegations relating to Ms. H. before the birth of Dustin; we further hold that the court, to the degree that it did consider Ms. H.'s activities prior to Dustin's birth as being probative of Ms. H.'s current household situation, did so properly.

### B.

■ With respect to Ms. H.'s second delineated contention, *i.e.*, MCDSS failed to cite any facts to support its contention that Ms. H. is not able to provide to Dustin ordinary and proper care, we again hold that the juvenile court acted properly. And, as above, again Ms. H. bases her contention on a misapplication of our holding in *William B.*

Ms. H.'s basic contention here is that *William B.* stood for the proposition that "[m]ere alcoholism of the parents is not ground under the [C.I.N.A.] statute for removing a child from his home with his parents." *William B.*, 73 Md.App. at 73, 533 A.2d 16. Ms. H. argues by analogy that because the C.I.N.A. petition *sub judice* is based solely on Ms. H.'s pre-petition problems with drugs, the holding in *William B.* applies to prevent the court from removing Dustin from his home. In so arguing, Ms. H. has misapplied our holding in *William B.*

In *William B.*, as noted above, we held that "*[m]ere* alcoholism" is an insufficient ground to remove the child from his parental home. *Id.* (Emphasis added.) That is, we held that alcoholism, in and of itself, is insufficient to justify removal of a child from his home. In the present case, the court failed to return Dustin to Ms. H. because of a *plethora* of factors, and not "merely" because of Ms. H.'s drug addiction *per se*. These factors included, *inter alia:* the short time that Ms. H. had remained "clean" (less than a month prior to the adjudication hearing) following sixteen years of drug abuse; two previous failures in drug rehabilitation programs; taking PCP, cocaine, and engaging in unprotected sex while pregnant; consorting with unsavory characters; and that appellant's new roommate had not been "checked out" in accordance with "new regulation[ ] requiring a background check."

As such, we find no merit to Ms. H.'s second contention.[3]

## C.

■ With respect to Ms. H.'s third delineated contention, *i.e.*, MCDSS failed to adequately support the finding that

---

**3.** We note without further comment that because the essence of the holding in *William B.* supports the present juvenile court's finding with respect to Dustin T., and because of the diversity of evidence which presently supports the lower court's ruling, we need not decide whether a juvenile court can remove a child from his parents' home on the basis of "mere" drug addiction.

Ms. H. ever abused or neglected the child, again we disagree.

Md.Fam.Law Code Ann. ["FL"] § 5–701(b) defines "abuse" as

the physical injury of a child by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child ... under circumstances that indicate that the child's health or welfare is significantly harmed *or at risk of being significantly harmed.*

(Emphasis added.)

FL § 5–701(n) defines "neglect" as

the leaving of a child unattended or other failure to give proper care and attention to a child by the child's parents, guardian, or custodian under circumstances that indicate that the child's health or welfare is significantly harmed or *placed at risk of significant harm.*

(Emphasis added.)

As discussed above, the court need not wait until the child suffers some injury before determining that he is neglected (or, for that matter, abused). *William B.,* 73 Md.App. at 77, 533 A.2d 16. The court may find either neglect or abuse if the child is merely *placed at risk* of significant harm. In other words, we believe that the MCDSS has a right—and indeed a duty—to look at the track record, the past, of Ms. H. in order to predict what her future treatment of the child may be. We believe that the juvenile court correctly determined that, under the totality of the circumstances (including Ms. H.'s track record), Dustin would be placed at risk of harm if he were returned to his mother at that time.

## II.

Ms. H. argues that a preponderance of the competent evidence entered on record in this case fails to support a finding that Dustin T. is a C.I.N.A. We disagree.

As MCDSS correctly notes in its brief before this court, Ms. H.'s "argument" with respect to Dustin's adjudication

as a C.I.N.A. consists solely of a chronological recitation of uncontroverted testimony given by MCDSS's witnesses.

Indeed, Ms. H. "argues" by citing no fewer than forty pieces of testimony, the majority of which clearly *support* (rather than contravene) the adjudication that Dustin is a C.I.N.A., including *inter alia:* (1) Ms. H.'s problems with drug abuse; (2) the fact that, when she presented for labor and delivery, she had not been taking her insulin for her diabetic condition for the prior week, she had not eaten anything for a day, and had used crack within six hours of admission; (3) she had been living with drug dealers and had been performing unprotected sexual acts with these individuals in exchange for living accommodations and drugs; (4) that Dustin was born with cocaine in his blood-stream; (5) that, unrelated to these proceedings, Ms. H. had been ordered to undergo drug counselling because of criminal theft-related charges against her; (6) that she relapsed after previous and several drug counseling programs; (7) that she tested positive for cocaine even *after* Dustin was born; (8) that her prognosis for recovery may only be fair, but it was too early in her rehabilitation program to tell; (9) that, after Dustin was born, the police (albeit on the request of Ms. H), executed a controlled undercover drug buy from Ms. H.'s apartment wherein they found drug paraphernalia as well as bullet holes in the walls; and (10) that the police based the search warrant on the fact that two of the people with whom Ms. H. had associated had outstanding attempted murder warrants.

While it may be true, as counsel for Ms. H. argues, that Ms. H. has made great—and commendable—strides toward putting her life back together, we may reverse the trial court's factual finding only if it was clearly in error. Md. Rule 8–131(c). As we discussed above, the lower court's function was to assess whether Dustin was placed at risk of significant harm; the court need not wait until he suffered some injury before determining that he is a C.I.N.A. *William B.*, 73 Md.App. at 77, 533 A.2d 16. The trial court

committed no clear error in determining that Dustin is a C.I.N.A., and thus we affirm the decision below.

## III.

 Ms. H. also asks us to determine whether, once Dustin was removed from Ms. H.'s home, the lower court impermissibly shifted the burden of proof away from the County to show the continued unfitness of the mother to care for Dustin—thereby impermissibly placing the burden on Ms. H. to affirmatively show her fitness as a parent— before the child was returned.

Ms. H. failed to preserve this issue for appellate review, and therefore we need not consider this argument. Had she preserved this issue for appeal, we would still hold that the trial court properly placed the burden of proof upon MCDSS.

Md.Rule 8–131 reads in relevant part as follows:

Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

*See also In re Colin R.,* 63 Md.App. 684, 695, 493 A.2d 1083 (1985) ("The record reveals that no objection to [the] standard of proof was raised at the trial below and, therefore, the appellants have not preserved the question for our determination.").

CJ § 3–819 provides in relevant part as follows:

In all ... cases [subject to a few delineated, and, at present, irrelevant, exceptions] the allegations [made by the county in its C.I.N.A. petition] must be proved by a preponderance of the evidence.

Expressly recognizing that the MCDSS had to prove the allegations in its C.I.N.A. petition by a preponderance of the evidence, the juvenile court—on no fewer than two occa-

sions—articulated and acknowledged the standard set forth in CJ § 3-819:

> I don't think there is any question that by a preponderance of the evidence [Dustin] is in need of assistance.

and

> I feel that there was more than a preponderance of the evidence that was presented by the county to sustain the petition.

The lower court properly allocated the burden, and a preponderance of the evidence supports the court's decision to maintain Dustin in foster care.

### IV.

■ Finally, Ms. H. asks us to determine whether the juvenile court erred by allowing continuous irrelevant and hearsay evidence despite repeated objection by counsel for Ms. H. We find that counsel for Ms. H., by objecting to the testimony at issue *solely* on the ground of relevancy, waived any right that she may have had to argue on appeal that this testimony was hearsay. Nevertheless, notwithstanding this waiver, the statements at issue were clearly relevant and were clearly *not* hearsay.

### A.

■ In her brief before this court, Ms. H. argues that [a]t the very beginning of the case[,] Ms. H asked for and obtained a standing objection as to any evidence regarding her prior drug use as not relevant to the child being declared a [C.I.N.A.]. Ms. H also objected [as] to [the relevance of] the testimony of [Dr. Scott Schneider, an] OBGYN, ... who testified as to what the record said Ms. H said about her prior living situation prior to the birth of the child. That would not only constitute double hearsay, it would not fall within the medical record exception to the hearsay rule[.]

Ms. H also objected [as] to [the relevance of the testimony of] her drug counselor, who testified as to Ms. H's drug history going back to age thirteen.

We begin by restating (for perhaps the third time in this opinion) what we believe to be a well-settled, and perhaps obvious, truism: we can only judge the future by the past. *See, e.g., McCabe,* 218 Md. at 383, 146 A.2d 768. As we noted above, employing inductive reasoning is not only logically necessary, it directly serves the purpose of the C.I.N.A. statute by seeking to protect children. We cannot say it strongly enough, nor enough times: a court need not wait for the child to be injured before the court intervenes. *William B.,* 73 Md.App. at 77–78, 533 A.2d 16. The only question that remains is whether the cited instances of Ms. H.'s past behavior are sufficiently probative of her present circumstances to be relevant and admissible. We believe they are.

There are essentially two instances of Ms. H.'s behavior which she contends are irrelevant: (1) her prior drug use (which began when Ms. H. was thirteen, and has continued for approximately sixteen years) and (2) her living situation prior to Dustin's birth. The record clearly reflects that both of these situations continued to profoundly affect her living situation up through the day of trial.[4]

As of the date of the hearing, Ms. H. had tested drug-free for only a month; she has had at least two relapses in the very recent past (i.e., during the three months directly before trial); testimony indicated that people associated with drug activity (not to mention drug-related violence) still frequent Ms. H.'s apartment, and that (as Ms. H. admitted in her brief before this court) the police have been back there many times to continue to chase people out of her apartment; although she contends that she moved out, her new roommate's record for sobriety and criminality is unknown to the court; and she herself admitted that if the

---

**4.** As we have no facts before us, we need not speculate as to how Ms. H. has fared since trial.

people around her use drugs, it is more difficult for her to remain clean.

Accordingly, the lower court acted properly in considering as relevant both Ms. H.'s former living situation and Ms. H.'s prior history with drugs.

### B.

■ As we indicated above, Ms. H. contends that the testimony of Dr. Scott Schneider was inadmissible as hearsay. Dr. Schneider, an OBGYN, saw Ms. H. twice prior to the birth of Dustin; he also saw her a third time the day that Dustin was born. As is relevant here, Dr. Schneider *inter alia* testified about Ms. H.'s prior medical history, including her prior history with drug abuse, and about Ms. H.'s living situation prior to Dustin's birth. Without having made an appropriate objection at trial, Ms. H. now contends that such testimony "would not only constitute double hearsay, it would not fall within the medical record exception to the hearsay rule[.]"

We disagree.

We begin by noting that Ms. H. objected to Dr. Schneider's testimony solely on the ground of relevance. As in *Brecker v. State*, 304 Md. 36, 497 A.2d 479 (1985), under "well-settled" Maryland law,

> when an objector sets forth the specific grounds for his objection, although not requested by the court to do so, the objector will be bound by those grounds and will ordinarily be deemed to have waived other grounds not specified.

*Id.* at 39–40, 497 A.2d 479 (citations omitted).

In objecting on the ground of relevance, Ms. H. has waived any opportunity to argue here that Dr. Schneider's testimony was also objectionable as hearsay.

Nevertheless, and notwithstanding the above, we note that Dr. Schneider's testimony was *not* hearsay. The testimony challenged by Ms. H. consists of statements made by her to Dr. Schneider, who was at that time her physician.

MCDSS quite correctly argues that Ms. H.'s statements constitute admissions of a party opponent:

Admissions, in the form of words or acts of a party-opponent, may be offered as evidence against that party. It is reasoned that allowing such an admission into evidence is fair, as the party-opponent's case cannot be prejudiced by an inability to cross-examine him or herself.

*Briggeman v. Albert,* 322 Md. 133, 135, 586 A.2d 15 (1991) (citations omitted). Here, MCDSS (i.e., Ms. H.'s party-opponent) offered to the court Dr. Schneider's testimony, which consisted of Ms. H.'s own statements concerning her previous activities. Therefore, Dr. Schneider's statements were both relevant (as discussed above) and not inadmissible as hearsay.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.