815 A.2d 931

In re ANDREW A.

No. 0726, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Jan. 31, 2003.

Nancy C. Hopkins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellant.

Mary J. Pizzo, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee.

Argued Before GREENE, SHARER, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

RODOWSKY, J.

The State of Maryland, acting by and through the Montgomery County Department of Health and Human Services,[1] appeals from a judgment of the Circuit Court for Montgomery County, sitting as a juvenile court. That court found that the respondent, Andrew A., was not a child in need of assistance (CINA) under the definition of that phrase that was enacted by Chapter 415 of the Acts of 2001, effective October 1, 2001, and that is codified as Maryland Code (1974, 2002 Repl.Vol.), § 3–801(f) of the Courts and Judicial Proceedings Article (CJ). The sole issue before us is whether the juvenile court's construction of CJ § 3–801(f) is correct.

Andrew A. is the fourth child of Sarah A. She was born in Ghana, West Africa, live d in England, and was brought to this country at age twelve by her mother. They lived in Boston where Sarah A.'s mother was her source of support, but her mother died sometime ago. Sarah A.'s oldest child, Margaret, born in 1988, and her next oldest child, Christina, born in 1991, now reside in England. When Christina was three months old she was removed from Sarah A.'s care by Massachusetts authorities, and it is Sarah A.'s understanding that her parental rights as to Christina were judicially terminated.

In 1993 Sarah A. married Ernest A., but the couple separated in 1996. Sarah A.'s third child, Isaac, was born of that marriage in 1994. According to Ernest A., Sarah A. had many "mental problems" and that it was due to his presence in the home that Isaac was not removed from Sarah A.'s care.

Sarah A. and Isaac moved to Maryland in February 2001. In May of that year, Child Welfare Services (CWS) received a

---

1. Maryland Code (1957, 1998 Repl.Vol.), Art. 88A, § 13A(b)(1) provides: "In Montgomery County, there is no local Department of Social Services. In Montgomery County State social service ... programs administered by a local department shall be administered by the Montgomery County government."

report from the social services agency in Worcester, Massachusetts alleging neglect of Isaac by his mother. Acting on the Massachusetts referral, CWS staff met with Sarah A. on May 21, 2001. She needed financial assistance and assistance in finding housing. Thereafter, Sarah A. has changed addresses a number of times.

For several months in the summer of 2001 Sarah A. had a sexual relationship with Alhalji K. He is the biological father of Andrew A., the infant who is the subject of these proceedings.

In August 2001 the State of Maryland petitioned to have Isaac found CINA. By a Montgomery County Juvenile Court order of September 17, 2001, Isaac was so adjudicated and placed in foster care.

Andrew A. was born May 14, 2002. He was placed in protective care at the hospital and in foster care on May 17, 2002. The State petitioned that Andrew A. be found CINA on June 10, 2002. Thus, at the juvenile court hearing on June 12 and 13, 2002, the evidence dealt with Sarah A.'s prior conduct, particularly as it had affected Isaac. Under those circumstances the juvenile court concluded, based on its interpretation of CJ § 3–801(f), that Andrew A. was not CINA.

 That statute, enacted in 2001, sets forth the following definition applicable to Subtitle 8, "*Juvenile Causes–Children In Need of Assistance.*"

"'Child In Need of Assistance' means a child who requires court intervention because:

"(1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and

"(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs."

The juvenile court, focusing on the words, "[t]he child … has been neglected," concluded that there was no evidence that Andrew A. had been neglected. Specifically, the juvenile court rejected the petitioner's argument based on *In re Wil-*

*liam B.,* 73 Md.App. 68, 533 A.2d 16 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 272 (1988), where this Court held that "the parents' ability to care for the needs of one child is probative of their ability to care for other children in the family." *Id.* at 77, 533 A.2d at 21.

The juvenile court presented the following rationale for its construction of CJ § 3–801(f):

"The holding in *William B.* I think applies to the old statute. I think that the legislature changed the statute, and it says that there has to be a finding that the child has been neglected.

"That is not here. Neglected is defined—and while people have been talking, I have been looking at this phrase, 'has been neglected,' meaning that this child has been neglected, and neglect means leaving a child under-attended, or other failure to give proper care and attention to a child, and that means the child that we are talking about in this case and not a prior child.

"All the arguments about *William B.* I think are very apposite under the old definition of CINA. The old definition of CINA just says child in need of assistance because the child's parents, guardian or custodian are unable or unwilling to give proper care and attention.

"*William B.* said you don't have to wait to find inability or unwillingness until a child is actually injured. Here it certainly looks like the legislature intended to say that you have to show that the child has been neglected.

"There is not evidence that this child has been neglected. Now, unless I want to just torture the language and pretend that the legislature didn't mean it, I can't find that this child has been neglected.

"I don't know how I can find the child a child in need of assistance. Everything that the Department says, all their concerns, all of the arguments about risk are all well taken, except I come back to what the law is, and the law says 'has been neglected,' and it may well be that this is a very unfortunate result for this child, but I think the legislature

intended 'has been neglected' means things have happened which show neglect.

"Neglect is defined as leaving a child unattended or other failure to give proper care and attention, and it doesn't say or a risk based upon prior actions with other children.

"It doesn't say that. Believe me, I am not at all comfortable with this decision, but I didn't change the law. They did."

■ In this Court Sarah A. submits that the definitional element that "the child has been ... neglected," is unambiguous and that, under the rules of statutory construction as recently repeated by the Court of Appeals in *Langston v. Langston*, 366 Md. 490, 784 A.2d 1086 (2001), this Court may not look beyond those words to determine the legislative intent. In *Langston*, the Court said:

"Where the General Assembly has enacted an unambiguous statute, we cannot, and will not, divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature. *See Mid–Atlantic Power Supply Assn. v. Pub. Serv. Comm'n*, 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000)("we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in a forced or subtle interpretation in an attempt to extend or limit the statute's meaning"); *Coleman v. State*, 281 Md. 538, 546, 380 A.2d 49, 54 (1977)."

*Id.* at 515–16, 784 A.2d at 1100.

■ In determining ambiguity, *vel non*, however, the statute must be considered as a whole. *Marzullo v. Kahl*, 366 Md. 158, 175, 783 A.2d 169, 179 (2001) (quoting *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997)). *See also Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989). Absence of ambiguity cannot be predicated on selecting a few words from the body of the entire statute. Here, the words, "has been

neglected," in § 3–801(f) must be read in light of the definition of "neglect" set forth in CJ § 3–801(s). That definition reads:

" 'Neglect' means the leaving of *a* child unattended or other failure to give proper care and attention to *a* child by any parent or individual who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:

"(1) That the child's health or welfare is harmed or placed at substantial risk of harm; or

"(2) That the child has suffered mental injury or been placed at substantial risk of mental injury."

(Emphasis added).

In the definition of "neglect" the class under consideration is children. Members of that class are individuals under the age of eighteen years. *See* CJ § 3–801(e) (defining "child"). The Revisor's Manual of the Governor's Commission to Revise the Annotated Code of Maryland (2d Ed.1973) at 51, establishes as a style guideline that "[o]nce the class has been defined, indicate a member of the class by use of 'every' or 'a.' " Consequently, "neglect" in § 3–801(s) is an abstract concept, not limited to the child who is the subject of the CINA proceeding. Proof of neglect of some child other than the child who is the subject of the proceeding raises a question of evidentiary relevance, dependent on the circumstances of the particular case, but § 3–801(s) does not create a statutory exclusion of evidence of neglect simply because the child directly affected by the neglect is not the subject of the CINA proceeding.

Further, it is clear from § 3–801(s)(1) and (2) that there may be neglect of a child without actual harm to the child. A "substantial risk of harm" constitutes "neglect." Thus, if there are two children involved in a parent's act or omission, but only one child is harmed, there nevertheless may be neglect of the second child if, depending on the facts, the act or omission created a substantial risk of harm to the second child.

When the definition of "neglect" is read into the definition of a "child in need of assistance" in § 3–801(f), it would seem to be clear that the child who is the subject of the CINA proceeding need not have suffered actual harm. The child may be CINA if "placed at substantial risk of harm." In any event, CJ § 3–801(f), when read in conjunction with § 3–801(s), is, at best from Sarah A.'s standpoint, ambiguous on whether evidence of neglect must be restricted to conduct directed to the child who is the subject of the CINA proceeding, or whether evidence of a substantial risk of harm to the subject child may lie in conduct directly affecting one or more siblings of the subject child.

In *Langston,* the issue was whether an award of alimony could be retroactively modified, an issue on which the relevant statute was silent. Essentially the Court of Appeals held that it would not insert a prohibition against retroactive modification when there was no prohibition in the statute. *Langston,* 366 Md. at 516, 784 A.2d at 1100. Similarly, here, we will not insert a prohibition excluding competent evidence relevant to whether the child who is the subject of the proceeding has been placed at substantial risk of harm.

Further, when the conventional aids to statutory construction are consulted, the ambiguity, if any, in CJ § 3–801(f) disappears. In this case those aids are the language of the predecessor statute, and its judicial interpretation; the committee notes that accompanied the statutory language of Senate Bill 660 which was enacted as Chapter 415 of the Acts of 2001; and the Report of the Judicial Proceedings Committee on Senate Bill 660.

In the immediate predecessor statute, Maryland Code (1974, 1998 Repl.Vol.), CJ § 3–801(e), a child in need of assistance was defined to be

"a child who requires the assistance of the court because:

"(1) the child is mentally handicapped or is not receiving ordinary and proper care and attention and

"(2) the child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's problems. . . ."

This definition did not utilize any form of the word, "neglect," and "neglect" was not a defined term in the predecessor of Subtitle 8. In the predecessor statute the language analogous to "has been neglected" in the current statute is the language, "is not receiving ordinary and proper care and attention." Under the predecessor statute the present progressive tense of the verb could have been read to relate exclusively to the subject of the proceeding, just as Sarah A. contends that the words, "has been neglected," relate exclusively to that subject child under the current statute. But that is not the judicial construction of the predecessor statute. *In re William B.,* 73 Md.App. 68, 533 A.2d 16.

That case involved two brothers, the older, age seven or eight, and the younger, age nearly five years old. The younger brother suffered from fetal alcoholism, mental retardation, cerebral palsy, and visual problems. His motor skills were those of a three to four month old infant. *Id.* at 75, 533 A.2d at 20. The evidence at the CINA hearing related almost exclusively to the lack of care to the younger brother by the alcoholic parents of the children. When the juvenile court found both boys to be CINA, the parents appealed, contending only that the order should be reversed as to the older child on the ground that the evidence as to the younger was not relevant to whether the older was neglected. This Court rejected that contention, holding that "the differences between the children do not negate the reasonableness of an inference that the parents' inability to care for [the younger boy] is evidence of an inability to care for [the older boy]." Further, the court reasoned that the purpose of the CINA statute, to protect children, would be impaired if the statute were construed to require a juvenile court to "wait until the child suffers some injury before determining that he is neglected." *Id.* at 77, 533 A.2d at 21. Thus, language in the prior definition of a "child in need of assistance" which, if applied literally, could have limited evidence of the lack of care only to

the child directly affected was not applied to exclude use of that evidence in order also to show a risk of harm to a sibling of the child directly affected.

The reasoning of *In re William B.* was applied in *In re Dustin T.*, 93 Md.App. 726, 614 A.2d 999 (1992). There the child had been born to a drug addicted mother. He was placed in temporary foster care within days after his birth and was found to be CINA about one month after his birth. Not only was the drug use by the mother harmful to the child during pregnancy, but the past conduct of the mother evidenced that there would be a substantial risk of harm to the child if the newborn were left in his mother's care. This Court said that "the lower court's function was to assess whether Dustin was placed at risk of significant harm; the court need not wait until he suffered some injury before determining that he is a C.I.N.A. *In re William B.*, 73 Md.App. at 77, 533 A.2d [at 21]." 93 Md.App. at 736, 614 A.2d at 1004.

The legislative history of the statute reveals that Senate Bill 660 was proposed by the Foster Care Court Improvement Implementation Committee of the Maryland Judicial Conference (the Committee). The bill as introduced carried notes from the Committee, although uncodified SEC. 8 of the bill provides that "the Committee Notes contained [in] this Act are not law and may not be construed to have been enacted as part of this Act." Consequently, the Committee Notes do not appear in the Maryland Code. Nevertheless, they were presented to the Legislature in order to explain the intent of the Committee and, thus, where, as here, the Legislature agreed with the Committee, the Committee Notes are evidence of legislative intent.

The Committee Note to § 3–801(f) in relevant part reads that "[t]his language was substituted for former CJ § 3–801(e) and revised for clarity." Sarah A. contends that the substitution and revision indicate that a substantial change was intended, so that the rule of *In re William B.* does not apply under the new statute. The revision, however, includes the

concept of "neglect," a definitional term. The Committee Note to that definitional section, § 3–801(s), in part reads that "[t]his definition was added to coincide with the definition in FL [Family Law] § 5–701 and reflects practice in this area of law." FL § 5–701 is the definitional section for the subtitle dealing with the reporting, investigation, and results of investigations of child abuse and neglect. FL § 5–701(p) defines "neglect" in language identical to that later used in CJ § 3–801(s).

It appears that the clarification effected in CJ § 3–801(f) by the 2001 legislation was defining "neglect" in the same way in the CINA statute and in the child abuse and neglect statute. The General Assembly thereby avoided possible confusion as to whether different standards were intended between the two statutes.

Further, the opinion in *In re Dustin T.* quoted the definition of neglect from FL § 5–701, with emphasis on the alternative form of neglect, *i.e.*, placing the child at risk of harm. *Id.* at 735, 614 A.2d at 1003. By looking to the Family Law Article definition of "neglect" in that CINA case, this Court concluded that the CINA petitioner "has a right—and indeed a duty—to look at the track record, the past, of [the mother] in order to predict what her future treatment of the child may be." *Id.*[2] Thus, we do not agree with Sarah A.'s contention that the 2001 amendment effected a substantial change from the law as it was reflected in *In re Dustin T.* As the Committee Note states, the new definition in CJ § 3–801(s) reflects how the statute was being applied in practice.

Finally, the floor report of the Senate Judicial Proceedings Committee on Senate Bill 660 explicitly states as follows:

"The definition of 'child in need of assistance' has also been revised for clarity; the revision is not intended to alter

---

**2.** At the time of the opinion in *In re Dustin T.*, neglect, which was then defined in FL § 5–701(n), described the alternative form of neglect as a "risk of significant harm." By Chapter 318 of the Acts of 1993 that alternative was rephrased to the present "substantial risk of harm." FL § 5–701(p).

existing caselaw holding that a child can be declared a CINA based on evidence of neglect or abuse of siblings in appropriate cases. *See In re William B.*, 73 Md.App. 68, 533 A.2d 16, 21 (1987) ('The judge need not wait until a child suffers some injury before determining that he is neglected.'); *In re Dustin T.*, 93 Md.App. 726, 614 A.2d 999, 1003 (1992) ('MCDSS has a right—and indeed the duty—to look at the track record, the past of Ms. H. in order to predict what her future treatment of the child may be.')."

For these reasons, we hold that the juvenile court applied a legally erroneous construction of CJ § 3–801(f) in deciding this CINA petition. Because of its legal conclusion, the court did not evaluate the facts to determine whether the conduct of Sarah A. demonstrated a substantial risk of harm to Andrew A. Accordingly, we vacate the judgment of the Circuit Court for Montgomery County and remand for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY VACATED. CASE REMANDED.**

**COSTS TO BE PAID BY THE APPELLEE.**