530 A.2d 766

**In re BEVERLY B.**

**No. 1429, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Sept. 8, 1987.

**434**

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Cathy S. Surace of Upper Marlboro, for appellee, Beverly B.

Mark J. Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief for appellee, Montgomery County) Baltimore, for appellees.

Submitted before ROSALYN B. BELL, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

At the conclusion of a review of commitment hearing, the District Court for Montgomery County, Juvenile Division, ordered Beverly B., the natural daughter of Carolyn C., appellant, removed from appellant's home and placed in specialized foster care. Appellant has appealed from that judgment, presenting three questions:

1. Did the court err in removing Beverly from her mother's custody?

2. Did the court err in failing to adequately state reasons for its removal of the child from the home and to provide guidelines for permitting the reunification of the family?

3. Did the trial court err in admitting hearsay evidence?

We will affirm.

The events giving rise to this appeal began in 1983 in Prince George's County. On October 13th of that year, following appellant's hospitalizations for the treatment of her mental illness, a child in need of assistance (CINA) petition was filed. As a result of that petition, Beverly B.,

and her brother, Stephen B.,[1] the other natural child of appellant, were each adjudicated CINA. Beverly B. was initially placed in the physical custody of her grandmother and subsequently in foster care. Her case was transferred to Montgomery County on March 27, 1985, at which time her commitment was also transferred to the Montgomery County Department of Social Services (MCDSS). Shortly thereafter, Beverly B. was physically placed in the care and custody of appellant, where she remained until removed by the order appealed from, on October 28, 1986.

From the time of her placement with appellant, MCDSS kept the court apprised of Beverly B.'s progress. In a status report, filed with the court on September 6, 1985, MCDSS recommended, "with strong reservations and concerns around safety and mental health issues", that Beverly B. remain with appellant. Its recommendation was adopted by the court. In a subsequent status report, dated February 21, 1986, the agency recommended foster home placement as a result of "concerns regarding [appellant's] ability to provide a consistent and nurturing environment for her children because of her mental illness." The court did not adopt that recommendation; instead, it continued Beverly B. in appellant's care and custody but ordered Beverly B. to spend every other weekend in "respite care". MCDSS' status report, dated September 24, 1986, filed with the court, noted the deterioration of Beverly B.'s behavior and school performance, questioned appellant's ability to "parent, guide, nurture and protect [Beverly B.] ...", and contained observations by Beverly B.'s psychologist that Beverly B. was in need of "a special structured and consistent environment which can provide very clear expectations for appropriate behavior." It recommended a foster home placement for Beverly B. It was on the basis of this status report that the court conducted the review of commitment

1. No issue was raised on this appeal concerning the placement of Stephen B., who at the time of hearing had been placed at the Regional Institute for Children and Adolescents (RICA).

hearing which resulted in the order from which this appeal has been taken.

The evidence presented at the review of commitment hearing, supporting a foster home placement for Beverly B., consisted of testimony by Beverly B.'s psychologist, appellant's psychiatrist, MCDSS social workers, Beverly B.'s teacher and principal at the school which Beverly B. attended, and a psychologist for the Montgomery County Public Schools. The evidence relating to Beverly B.'s adjustment at school tended to prove that, since her return to school in the fall of 1985, her performance and behavior had deteriorated and that she "just doesn't seem to relate to any of us the way she did before."

The medical testimony recommended removal of Beverly B. from appellant's care and custody. Beverly B.'s psychologist testified that Beverly B., who suffered from pervasive developmental disorder, attention deficit disorder, and mild to moderate mental retardation, was not making the kind of progress expected of her. In her opinion, this lack of progress was caused by a chaotic and stressful home life and the prospects of improvement in the future were unlikely. She also testified that Beverly B. has adopted appellant's inappropriate problem solving coping skills, resulting in Beverly B. becoming unnecessarily upset and angry. Moreover, the psychologist opined that, since progress in Beverly B.'s therapy depended upon her home environment, the chaotic nature of that environment did not bode well for the therapy's success. Finally, the psychologist expressed concern about two reported incidents of sexual assault on Beverly B. by male friends of appellant. In one of those incidents, Beverly was inappropriately kissed and physically abused, and, in the other, a man put his penis in her mouth. It was reported that appellant delayed reporting the latter incident until she became angry with the man for other reasons.

Appellant's psychiatrist, who attended appellant from April 1983 until September 1986, acknowledged that Beverly B.'s psychologist was "the expert about what is best for

Beverly at this time." He also testified that appellant's behavior "seems to really have negative effects on Beverly...." He too testified to appellant's getting her daughter "stirred up, upset, disorganized, agitated," and "to his belief that she [appellant] was unable to protect Beverly B. from 'potential or real sexual molestation.'"

The testimony of the social workers was to the effect that they did not believe that appellant was capable of providing the stable home environment which Beverly B. needs. This opinion was related directly to Beverly B.'s special needs and multiple handicaps.

Medical testimony favorable to appellant was also presented. Appellant called a psychiatrist who, testifying as an expert, stated that Beverly B.'s problems were biological rather than environmental and that the cause of her lack of progress was related to her having been placed on the wrong medication. He also testified that once he changed her medication her hyperactivity and attention deficit disorder were alleviated to some extent. The psychiatrist's opinion was based upon five hours of interviews with Beverly B. He had not, however, reviewed Beverly B.'s medical records or consulted with either Beverly's psychologist or appellant's psychiatrist.

It was generally agreed that appellant dearly loved Beverly B. and that there was a strong bond between them. The medical testimony and that of the social workers confirmed this fact. In addition, appellant presented the testimony of a friend that not only was appellant a loving and caring mother but her household was not unusually chaotic.

1.

Appellant does not contest the court's determination that Beverly B. is a child in need of assistance. She contends only that the court erred in adopting "the radical 'cure' of breaking up of the family unit." Specifically, she reasons that because "the record is clear that Beverly was at all times appropriately dressed, clean, and well-nourished [and that] the record reflects with untarnished clarity Appel-

lant's deep love for Beverly, and her intense desire that Beverly be properly cared for, the only basis for the court's decision was her mental illness." Proceeding from this premise, she argues that because a parent's mental illness is an inappropriate basis for removal of the child, the court erred in removing Beverly from her custody.

An essential purpose of the Juvenile Causes Act is "[t]o conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety." Maryland Cts. and Jud.Procs.Code Ann. § 3–802(a)(3). Thus, of paramount concern when the issue is the removal of the child from the custody of his parents is the child's best interest or "the interest of public safety." *In Re Jertrude O.*, 56 Md.App. 83, 98, 466 A.2d 885 (1983). *See Montgomery County v. Sanders*, 38 Md.App. 406, 407, 381 A.2d 1154 (1977). Although we acknowledge, as appellant correctly points out, that removal of a child from her mother is a drastic remedy which should be avoided, *In Re Jertrude O.*, 56 Md.App. at 98, 466 A.2d 885, we nevertheless will reverse the findings of fact of the trial judge only if they are clearly erroneous. Md.Rule 1086; *Davis v. Davis*, 280 Md. 119, 125, 372 A.2d 231, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). Nor will we disturb the ultimate conclusion based upon those factual findings if there has been no clear abuse of discretion. *Davis v. Davis*, 280 Md. at 126, 372 A.2d 231. Moreover, in reviewing the court's decision, we also determine whether the factual findings and the ultimate conclusion are supported by the appropriate evidentiary standard: a preponderance of the evidence. *In Re Colin R.*, 63 Md.App. 684, 697, 493 A.2d 1083 (1985).

Appellant's contention that Beverly B. was removed from her home solely on the basis of her mental illness is simply not correct. It is, of course, correct that the impact of appellant's mental illness upon the child's development did play a role, and justifiably so. The medical evidence

tended to prove that the child had special needs and was multiply handicapped. Thus, she needed a highly structured environment and appropriate role models. Appellant's proneness to agitation and disorganization and her tendency to operate in a crisis oriented fashion, characterized by a "chaotic" lifestyle—behavior patterns Beverly B. was likely to emulate—prompted the medical witnesses to recommend Beverly's removal from the home. In addition, there was testimony describing the deterioration of Beverly B.'s progress, both at home and in school, following her return to appellant's home. It was this testimony, and not just that appellant suffered from mental illness, on which the trial judge relied in adopting MCDSS' recommendation to place Beverly B. in a foster home. Our review of the record does not reveal any basis for determining that the trial judge's fact finding was clearly erroneous or that his ultimate conclusion to order foster home placement was an abuse of discretion. Accordingly, we discern no error.

### 2.

█ Focusing upon the court's ruling, given at the conclusion of the review of commitment hearing, appellant asserts that the court did not properly state the reasons for its decision and failed to communicate clearly "to appellant and the involved Social Service agencies precisely what must occur in order for the family to be reunited." Appellant urges that we find reversible error on these bases. She relies upon *In Re Jertrude O., supra.* At the outset, we note that *Jertrude O.* does not require a trial judge to state his reasons for his decision in any particular form or with any particular degree of specificity. Rather, the Court stated:

> The Legislature and the Supreme Court have both expressed the view that children should not be uprooted from their family but for the most urgent reasons. We add to that admonition the further suggestion that the reasons should be clearly explicated by the trial judge

who assumes that awesome responsibility and that his findings of fact should expressly support his conclusions. 56 Md.App. at 99, 466 A.2d 885. Thus, the Court merely suggested that the trial judge "clearly explicate" the reasons for his decision. Moreover, in another context, we have clearly stated that "not every step in [a trial judge's] thought process needs to be explicitly spelled out." *Zorich v. Zorich,* 63 Md.App. 710, 717, 493 A.2d 1096 (1985). *See Campolattaro v. Campolattaro,* 66 Md.App. 68, 77, 502 A.2d 1068 (1986); *Bangs v. Bangs,* 59 Md.App. 350, 370, 475 A.2d 1214 (1984). Therefore, although appellant is correct that the trial judge in rendering his decision did not delineate as clearly as he might have the reasons for his decision, our review of the record convinces us, as we have found in part 1, that the reasons underlying his decision are supported by the record.

■ Appellant's contention that the court should have developed a reunification plan as a part of his decision-making process is similarly without merit. The court was not required to develop a reunification plan simultaneous with deciding to remove the child from the home. Nevertheless, the court did emphasize that reunification was an important goal toward which to work and, indeed, set forth some of the components of such a plan: a day care program for appellant, visitation by appellant with Beverly B., and coordinated therapeutic intervention by appropriate professionals. We do not perceive any error on the part of the trial judge in this regard.

3.

Appellant's final complaints concern evidentiary rulings made by the trial judge. None of those complaints has merit.

■ Appellant first contends that the trial court erred in permitting Beverly B.'s psychologist to testify regarding hearsay statements, made by appellant, that Beverly B. had been sexually assaulted. Assuming that appellant is correct, that the court admitted hearsay testimony, any error

that entailed was harmless because appellant, during her case, testified about the same matter. *See Robeson v. State,* 285 Md. 498, 507, 403 A.2d 1221, *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

 Appellant also contends that certain statements made by a social worker were hearsay, admission of which, over her objection, was error. One of the statements involved the social worker's reporting of what he was told by the clinical director of RICA about appellant's relationship with RICA, specifically, that appellant was a disruptive individual who "fought tooth and nail" with the institution. The other statement about which appellant complains is the social worker's statement to the court respecting assurances he received that appellant would not lose her housing and financial benefits if Beverly B. were removed from the home. As to the first statement, the court made it clear that it did not rely upon hearsay evidence in reaching its decision. Thus, the admission of that testimony was not prejudicial error. *See Agnew v. State,* 51 Md.App. 614, 625–30, 446 A.2d 425 (1982). Concerning the second statement, even assuming it to have been improperly admitted, we do not deem it to be of sufficient relevance or significance, in the totality of the circumstances, to warrant reversal.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.