667 A.2d 956

**In re MICHAEL G.**

**No. 2117, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Nov. 30, 1995.

Shannon E. Avery, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Donna R. Heller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellee.

Submitted before MOYLAN, BLOOM and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from a judgment of the Circuit Court for Prince George's County, sitting as a juvenile court, in which Michael G. was determined to be a child in need of assistance. Michael's mother, appellant Carol G., noted a timely appeal from that ruling and presents a single question for our review:

I.  Did the trial court improperly find Michael G. to be a child in need of assistance based upon inadmissible hearsay?

## FACTS

The following facts are gleaned from the record and from the juvenile master's report and recommendation.[1] On August 1, 1994, appellee Prince George's County Department of Social Services (DSS) filed an emergency petition in the Circuit Court for Prince George's County alleging that Michael G. was a child in need of assistance (CINA). Michael was five years old at the time. A hearing was held before a juvenile master on September 7, 1994. Officer Dee Thomas testified that, at approximately 10:15 a.m. on July 29, 1994, she responded to appellant Carol G.'s home to investigate a call regarding a juvenile allegedly with a weapon. Michael answered the door of the home and the officer soon realized that Michael was alone. According to Officer Thomas, Michael was vaguely aware that his mother was a security guard and stated that she periodically calls him during the day. Michael was clothed, and had a snack, lunch, and a drink for the day. Unable to locate anyone who could take responsibility for Michael, Officer Thomas took Michael to the police station where he was later picked up by Rico Williams–Nared, a social worker for the DSS. When Officer Thomas returned to the apartment at the end of her shift between 4:00 and 5:00 p.m., she observed that the paperwork for Michael was still in the door where she had left it.

---

1.  The proceedings before the master were never transcribed and have not been made a part of the record.

Ms. Williams–Nared testified that, before she picked up Michael from the police station, she discovered that there had been three prior neglect referrals relating to Michael, dating from February of 1993 to October of 1993. The DSS had followed up on at least one of the referrals and its interest in Michael had been closed in February of 1994. Michael told Ms. Williams–Nared that his mother worked in security and that he did not know her telephone number. Michael also stated that Rosetta Brooks was his regular babysitter but that no one was watching him that day and no one was there when he awakened that morning. Michael stated that he was not afraid to be left alone.

After the shelter care hearing held on August 1, Ms. Williams–Nared spoke with appellant outside the courtroom for thirty to forty-five minutes. Ms. Williams–Nared testified that, during this interview, appellant gave conflicting accounts of why Michael was left alone on July 29. Appellant first said that she did not have enough money to pay for child care and that she had to leave Michael alone that day. When questioned about receiving DSS day care vouchers, however, appellant then said that she had hired an eighteen-year-old to babysit Michael. Later, appellant stated again that she could not afford child care and that she left Michael lunch and called him periodically throughout the day. Appellant also stated that the system penalizes her because she cannot afford childcare. On cross-examination, Ms. Williams–Nared admitted that she did not contact either Ms. Brooks or Jonna Kelly, another babysitter whom appellant had mentioned. She also did not contact the eighteen-year-old babysitter, whose name she had learned was Lavona Johnson.

Appellant testified that Ms. Kelly had been Michael's regular babysitter until she began having trouble paying Ms. Kelly regularly. Because Ms. Johnson cost less money, she began to let Ms. Johnson care for Michael. Appellant stated that Ms. Johnson slept over on the night of July 28 and was there when appellant left for work on July 29.

Ms. Kelly testified on behalf of appellant. Ms. Kelly stated that she had been Michael's regular babysitter from February 14, 1994 until the end of July when appellant's day care vouchers from DSS were up for renewal. She testified that appellant asked her to help renew the vouchers and that she did so. Ms. Kelly was on vacation from July 24 to 29 and stated that the last date on which she actually saw Michael was on July 22.

Appellant's lawyer stated that he had been unable to locate Ms. Johnson to subpoena her as a witness.

The master took "judicial notice" of a prior CINA case involving Michael over which she had presided in May of 1993.[2] The master stated that

> the prior case before the Court involved virtually the exact same circumstances, including, the Court notes, the same type of explanation from Ms. G[ ], that there was a babysitter, that the person was there when Ms. G[ ] left for work, and that for whatever reasons that person left the home. It is unrefuted that Michael was found alone in the home and that the person who was the babysitter disappeared and could not be found as a witness for the Court case.... The Court had the advantage of her notes from the prior hearing. It is observed that Ms. G[ ]'s testimony is almost a carbon copy of her prior testimony in her other hearing. This Court does not believe that there was an 18 year old babysitter there....

---

2. In the prior case, one of appellant's neighbors had found Michael wandering around the streets at approximately 1:00 a.m. and called police. The person who was supposedly babysitting Michael at the time could not be located as a witness for trial. Based on Michael's changing statements and the fact that "everyone agrees that a babysitting arrangement had been set up for Michael," the master recommended that Michael remain in his mother's custody but under DSS supervision. According to the master, the petition was ultimately dismissed "not because of lack of evidence, but rather after a continuance period by Ms. G[ ] of close to six months, it was felt that the remedial actions by Ms. G[ ] with the Department had taken care of the problem of Michael being left alone."

The master also stated that "if anyone should have been hypervigilant about this child being with a licensed day care provider at all times when she was not with him, this person should have been Ms. G[ ]." Although the master found that the basis for appellant's babysitting problem was a "function of what her wages are," the master recommended that Michael be committed to the care and custody of the DSS. The master recommended that physical custody of Michael remain with his mother in light of her new living arrangement.[3]

Appellant filed exceptions to the master's recommendations, and an exceptions hearing was held on October 14, 1994. Appellant argued that Michael's out-of-court statements to Officer Thomas and to Ms. Williams–Nared were improperly admitted as statements by a party-opponent.[4] After hearing argument on the issue, the court ruled that the master did not err in admitting Michael's statements to the police officer and to the social worker and overruled appellant's exceptions. This appeal followed.

## LEGAL ANALYSIS

■ A child in need of assistance is defined as a child needing court protection because he or she

(1) ... is not receiving ordinary and proper care and attention, and

(2) His [or her] parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his [or her] problems....

MD.CODE ANN., CTS. & JUD.PROC. (CJP) § 3–801(e) (1995 Repl. Vol.). An allegation that a child is a CINA must be proved by a preponderance of the evidence. CJP § 3–819(d); MD.RULE 914.e.3; *In re Joseph G.,* 94 Md.App. 343, 347, 617 A.2d 1086

---

3. The master indicated that appellant "is now living in a situation where adults are present to babysit on a fairly regular basis."

4. Appellant also argued that the master's recommendations were improperly based upon her personal recollections of the prior CINA case involving Michael. Appellant has not pursued this argument on appeal.

(1993). We will not set aside a lower court's adjudication of CINA unless the determination was clearly erroneous. *Joseph G.,* 94 Md.App. at 346, 617 A.2d 1086.

The roles of the master and the chancellor in juvenile proceedings are well-established. Under CJP § 3–813 and Maryland Rule 911, a master for juvenile causes is expressly authorized to conduct hearings. CJP § 3–813(b); MD.RULE 911.a; *In re Michael W.,* 89 Md.App. 612, 618, 599 A.2d 458 (1991). *See also* CJP § 3–813(a)(2)(i) (discussing the authority of a master in Prince George's County). The master must make written findings of fact, conclusions of law, and recommendations with respect to adjudication and disposition. CJP § 3–813(b); MD.RULE 911.b. The master's findings and recommendations, however, are not final orders of the court. CJP § 3–813(d). It is the chancellor's role, and not the master's, to determine the ultimate rights of the parties. *Lemley v. Lemley,* 102 Md.App. 266, 277, 649 A.2d 1119 (1994); *Michael W.,* 89 Md.App. at 618, 599 A.2d 458.

After the master submits his or her recommendations to the juvenile court, any party may file exceptions to the master's recommendations. CJP § 3–813(c); MD.RULE 911.c. The exceptions must be in writing, specify the items to which the party objects, and indicate whether the hearing on the exceptions is to be *de novo* or on the record. CJP § 3–813(c)(2); MD.RULE 911.c. Although the chancellor must exercise his or her independent judgment in ruling on the party's exceptions, *see Lemley,* 102 Md.App. at 277, 649 A.2d 1119, the exceptions hearing is limited only to those matters to which exceptions have been taken. CJP § 3–813(c)(4); MD.RULE 911.c; *Michael W.,* 89 Md.App. at 619, 599 A.2d 458.

In the case *sub judice,* appellant excepted only "to the Recommendations" of the master and requested a "hearing on the record." At the exceptions hearing, appellant argued that the master improperly admitted Michael's statements to Officer Williams and to Ms. Williams–Nared as statements by a party-opponent. Although the court did not rule on whether Michael's out-of-court statements were properly admitted un-

der the party-opponent exception to the hearsay rule, it concluded simply "that the master did not err" in admitting the statements.[5] In a case tried by the court, we review the case on both the law and the evidence and will not set aside the court's ruling on the evidence unless clearly erroneous. MD.RULE 8–131(c). Because the issue to which appellant excepted and on which the court ruled was a purely legal issue, however, our review is expansive. *See Jensen v. Jensen,* 103 Md.App. 678, 687, 654 A.2d 914 (1995) (a chancellor's ruling on a purely narrow issue of law is not entitled to deference); *Bagley v. Bagley,* 98 Md.App. 18, 34, 632 A.2d 229 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191 (1994) ("Appellate review of a question of law does not trigger the clearly erroneous rule.").

In general, the rules of evidence, including the rules regarding hearsay, apply in juvenile adjudicatory hearings. *In re Rachel T.,* 77 Md.App. 20, 30–32, 549 A.2d 27 (1988). *Cf.* MD.RULE 5–101(c) (in the interests of justice, a juvenile court may decline to require strict application of the rules of evidence, other than those relating to the competency of witnesses, in waiver hearings (Rule 913), disposition hearings (Rule 915), and modification hearings (Rule 916)). *See also* MD.RULES 913.d, 915.b, and 916.d; CJP § 9–103.1 ("tender years" exception to the hearsay rule in child abuse or neglect proceedings). Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. MD.RULE 5–801(c); *Rachel T.,* 77 Md.App. at 33, 549 A.2d 27. Under Rule 5–803, a prior out-of-court statement by a "party-opponent" is not excluded by the hearsay rule and is admissible when offered against that party. MD.RULE 5–803(a). Our task is to determine whether Michael's statements were admissible under this exception.

---

**5.** As we previously indicated, neither we nor the chancellor had the benefit of the transcript from the hearing conducted before the master. Despite not having the transcript, however, the parties effectively agreed to the substance of Michael's out-of-court statements and proceeded with the exceptions hearing.

■ Under CJP § 3–801(r), "a child who is the subject of a petition" is included within the definition of a "party." In order for the child's statement to come in as an admission by a party-opponent under Rule 5–803, however, the statement must be offered *against the party who made the statement.* *See* MD.RULE 5–803(a) (a statement by a party-opponent is "[a] statement that is offered against a party and is ... the party's own statement"). In *In re Dustin T.,* 93 Md.App. 726, 614 A.2d 999 (1992), for example, we held that a mother's statements, offered through her obstetrician, were admissible against her in a CINA proceeding as a statement by a party-opponent. We stated:

> Admissions, in the form of words or acts of a party-opponent, *may be offered as evidence against that party.* It is reasoned that allowing such an admission into evidence is fair, as the party-opponent's case cannot be prejudiced by an inability to cross-examine him or herself.

*Id.* at 741, 614 A.2d 999 (quoting *Briggeman v. Albert,* 322 Md. 133, 135, 586 A.2d 15 (1991)) (emphasis added). *See also Kuhl v. Aetna Cas. & Surety Co.,* 51 Md.App. 476, 487, 443 A.2d 996 (1982), *aff'd,* 296 Md. 446, 463 A.2d 822 (1983) (a statement by a party-opponent "contemplates the use of purported admissions *against the person making the admission* or against those persons who are bound by the admission"). In the instant case, Michael did not testify at the hearing and his prior out-of-court statements were not offered against him. Rather, the statements were offered *against his mother.* Appellant did not authorize Michael to make the statements or adopt the statements and could not otherwise be said to be bound by them. Under these circumstances, the statements clearly do not qualify as statements by a party-opponent.

We hold that a child's out-of-court statements, when offered against a party other than the child, are not admissible in CINA proceedings under the party-opponent exception to the hearsay rule. To hold otherwise would render all children's statements admissible in all CINA proceedings, clearly a result not permitted under the rules of evidence. *See* MD.

RULE 5–101 (specifying the proceedings to which the rules of evidence may not apply).

Although Michael's statements were not admissible under the party-opponent exception to the hearsay rule, if the statements were properly admitted under any exception, we may affirm the chancellor's ruling. *See Wilson v. State,* 334 Md. 313, 333, 639 A.2d 125 (1994); *Aubinoe v. Lewis,* 250 Md. 645, 649, 244 A.2d 879 (1968). At the exceptions hearing, the parties argued whether Michael's statements would have been admissible under the "tender years" exception to the hearsay rule, as statements against interest, or as excited utterances.

■ Under CJP § 9–103.1, commonly known as the "tender years" exception to the hearsay rule, an out-of-court statement by a child under the age of twelve is admissible to prove the truth of the matter asserted in a juvenile proceeding for neglect. CJP § 9–103.1(b)(1)(iv). The statement must have been made to and offered by a licensed physician, psychologist, social worker, or teacher, and have particularized guarantees of trustworthiness. CJP § 9–103.1(b)(2), (3). Under the version of the statute in effect at the time of Michael's hearing, however, the child must have either been available for cross-examination and testified at the hearing or must have been unavailable due to death, absence from the jurisdiction, serious physical disability, or inability to communicate due to severe emotional distress. *See* 1994 Md.Laws 1507, 1508–09. Michael did not testify at the hearing and was not "unavailable" within the meaning of former § 9–103.1(c)(2)(i). Accordingly, Ms. Williams–Nared's recitation of what Michael told her was not admissible under this exception. Although Michael's statements to Ms. Williams–Nared would have been admissible under the current version of CJP § 9–103.1, the current version did not take effect until October 1, 1994, twenty-four days *after* the adjudicatory hearing before the master. Moreover, counsel for the Department specifically waived reliance on the statute at the exceptions hearing.

■ There was no indication in the master's report to suggest that Michael's statements were made "under the

stress of excitement caused by [a startling] event or condition" so as to qualify under the excited utterance exception. *See* MD.RULE 5–803(b)(2). To the contrary, Officer Thomas's testimony that Michael "acted hesitantly" directly undermines this contention. Appellee concedes that Michael's statements were not admissible as statements against interest under Rule 5–804(b)(3). In sum, we do not believe that Michael's statements, either to the police officer or to the social worker, were admissible under any hearsay exception. Accordingly, the chancellor erred in ruling that the statements were admissible.

Appellee argues that, despite the fact that Michael's statements to the police officer and to the social worker were improperly admitted, "their admission was, at most, harmless error." Appellee contends that we may affirm the juvenile court's finding that Michael was a CINA because Michael's statements were merely cumulative of other evidence that was properly admitted at the hearing. *See In re Beverly B.*, 72 Md.App. 433, 442–43, 530 A.2d 766 (1987) (holding that the improper admission of some hearsay evidence in a CINA proceeding was harmless error). This argument blurs the carefully-delineated roles of the master, the chancellor, and the appellate court in juvenile proceedings. If the chancellor had correctly determined that Michael's statements were improperly admitted at the hearing before the master, the chancellor would then have been required to determine whether a preponderance of the admissible evidence showed that Michael was a CINA. In this situation, the chancellor must defer to the master's factual findings and opportunity to judge the credibility of the witnesses. *Michael W.*, 89 Md.App. at 621, 599 A.2d 458. The chancellor must then exercise his or her independent judgment as to the proper outcome based upon those facts. *Lemley,* 102 Md.App. at 277, 649 A.2d 1119. In the case *sub judice,* the chancellor did not undertake such a determination. It is not the province of this Court to usurp the chancellor's role and to rule on the weight of the evidence where the chancellor has not done so. *See Joseph G.,* 94 Md.App. at 347, 617 A.2d 1086 (an appellate court will not disturb the chancellor's conclusions based upon factual find-

ings not clearly erroneous absent a clear abuse of discretion); *Beverly B.*, 72 Md.App. at 440, 530 A.2d 766 (same). *See also* MD.RULE 8–131(a) (an appellate court will ordinarily not decide an issue unless it has been raised in or decided by the lower court). Accordingly, the case is remanded for the chancellor to consider whether a preponderance of the admissible evidence before the master indicated that Michael was a CINA. Also, there is nothing to prevent Michael from being called to testify on remand.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**