521 A.2d 340

**HOLIDAY SPAS, et al.**

v.

**MONTGOMERY COUNTY HUMAN RELATIONS COMMISSION, et al.**

**No. 873, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 13, 1987.

David E. Manoogian (Jean M. Jones, and Beckett, Cromwell & Myers, P.A., on brief), Bethesda, for appellants.

Joyce R. Stern, Sr. Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., on brief), Rockville, for appellees.

Argued before GILBERT, C.J., and WILNER and BISHOP, JJ.

WILNER, Judge.

Appellants, whom we shall collectively call "Holiday," operate exercise and fitness spas in Montgomery County where men go to look like Tarzan and women go to look like Jane. One of the programs offered by Holiday to help make women look like Jane is aerobic dancing.

The dispute now before us began when three budding Tarzans decided that their physical, mental, emotional, or libidinal health might be improved if they too could take part in the aerobic dancing program. Holiday had a different view: the aerobic dancing program was just for Janes; no Tarzans allowed. This brought a complaint to the Montgomery County Commission on Human Relations, in which the excluded males grieved that they paid the same membership fees as the women and that, prior to their enrolling, Holiday had led them to believe that all of its facilities would be available to them.

Section 27–9 of the Montgomery County Code, which is part of the County Human Relations and Civil Liberties ordinance, makes it unlawful for an owner, manager, or

employee of any place of public accommodation, resort, or amusement in the county (1) to make "any distinction with respect to any person based on ... sex ... in connection with admission to ... or use of any facility ..." or (2) to publicize any notice stating that "any facility service ... or activity in such place of public accommodation, resort, or amusement will not be made available to any person in full conformity with" that section.

Sections 27–2 and 27–6, respectively, create the county Commission on Human Relations and empower it, among other things, to receive, investigate, and adjudicate complaints of unlawful discrimination. Section 27–7 sets forth a specific procedure for carrying out those duties. Essentially, upon the filing of a complaint, the Executive Director undertakes an investigation to determine whether "reasonable cause exists to believe a violation of this article has occurred," and, if he finds such reasonable cause to exist, he attempts to conciliate the dispute. If conciliation efforts fail, the matter is referred to a Commission panel, which issues a statement of charges and conducts an evidentiary hearing.

Section 27–7(f) provides, in relevant part:

"If at the conclusion of the hearing, the panel shall determine that a respondent has engaged in unlawful discriminatory practice or has otherwise violated the provisions of this article, the panel shall issue and cause to be served on such respondent, a decision and order, accompanied by findings of fact and conclusions of law, requiring such respondent to cease and desist from such unlawful discriminatory practice, and to take such affirmative action and prospective relief as necessary to effectuate the purposes of this law or to eliminate the effects of the discriminatory practice and such other relief elsewhere provided in this article."

The "other relief" mentioned in § 27–7(f) has reference to subsection (k), which permits the Commission to award damages and reasonable counsel fees to a complainant.

Subsection (k)(4), in particular, provides: "Damages may also be awarded to compensate complainant or respondent for humiliation and embarrassment suffered in an amount determined by the commission panel to be appropriately and reasonably warranted considering all of the circumstances, but in no event shall the amount be in excess of one thousand dollars ($1,000.00)."

Section 27–7(f) declares that "[a] panel order shall be deemed a final commission order." Subsection (g) permits any person aggrieved by a § 27–7(f) decision and order to appeal to the Circuit Court in accordance with Ch. 1100, subtitle B of the Maryland Rules. Pending such an appeal, any action to enforce the decision and order "shall be stayed." § 27–7(h).

Upon the filing of the complaints at issue here, the Executive Director made his preliminary investigation, found reasonable cause to believe that Holiday's exclusion of the male complainants violated the law, and attempted efforts at conciliation. When those efforts failed, he certified the case to the Commission's Public Accommodations Panel.

Overcoming a barrage of motions and a concerted effort by Holiday to delay or dismiss the proceeding, the panel conducted nine days of hearings during June and July, 1985.[1] Although the complainants apparently had sought

---

1. Holiday went to great length to delay the administrative proceeding. Less than two weeks before the scheduled commencement of the hearing, it filed an action in the Circuit Court seeking a declaratory judgment that the ordinance was unconstitutional and an interlocutory injunction staying the administrative proceeding. The panel, over Holiday's objection, went ahead with the hearings even during the pendency of the judicial proceeding. At some point, the court denied the requested injunctive relief, whereupon Holiday appealed to us pursuant to Md.Code Ann. Courts article, § 12–303(3)(iii) (1986 Cum.Supp.). We affirmed, concluding that Holiday "failed to meet any one of the four standards necessary to be granted the extraordinary remedy of interlocutory relief. Most notably, appellant is not likely to succeed on the merits and failed to show the irreparable injury which would result from continuation of the [Commission] proceedings." *Holiday Universal Club v. Montgomery Co.,* 67 Md.App.

only equal access to the aerobic dance classes and had not requested a refund of any part of their membership fee or claimed any other damages, the panel, at some point not clear from the record, decided (1) that damages might nonetheless be an issue, and (2) to bifurcate the proceeding and hold the question of damages aside.

Following the summer hearings, the panel, on September 13, 1985, entered what it termed a "Decision and Order" in which it (1) rejected all of Holiday's arguments against making the aerobic dancing classes coeducational, (2) found no convincing evidence that Holiday would suffer any business hardship from ending this discriminatory aspect of its program, (3) determined that ending sex discrimination is a public policy that should override Holiday's desire to continue the program as designed, (4) ordered Holiday, within 10 days, to offer men and women equal access to aerobic dance classes and facilities or a "substantially similar opportunity to participate in" those classes and facilities, (5) ordered Holiday, by November 15, 1985, to submit a written plan for review by the Commission, showing precisely how it intended to comply, (6) directed Holiday to post certain notices in its facilities stating that it does not discriminate on the basis of sex and that "it welcomes men into its aerobic dance classes," and (7) informed Holiday of the right of any party "aggrieved by a final decision in a case governed by this chapter" to judicial review "in accord with the provisions of the Maryland Rules of Procedure governing administrative appeals."

Pursuant to its earlier decision, the panel expressly reserved ruling on the issue of damages, indicating in its Decision and Order that further hearings would be required.

---

568, 576–77, 508 A.2d 991 (1986). Not pleased with that decision, Holiday sought review by the Court of Appeals, and then by the United States Supreme Court. Both Courts denied its petition for *certiorari.* See 307 Md. 260, 513 A.2d 314 (1986), —— U.S. ——, 107 S.Ct. 920, 93 L.Ed.2d 973 (1987).

With a nervous eye on *Houghton v. County Comm'rs of Kent Co.*, 305 Md. 407, 504 A.2d 1145 (1986), Holiday filed an immediate appeal in the Circuit Court, contending that the panel's Decision and Order of September 13 was appealable as a final order because it required Holiday to take certain immediate action that would be costly to it and that the Commission, for a variety of reasons, was wrong in its findings and conclusions. Stressing the fact that damages was still an open question and that the administrative proceeding had therefore not been concluded, the Commission moved to dismiss the appeal.

The court recognized merit in both positions. On March 27, 1986, it entered an order that (1) granted the motion to dismiss and remanded the case to the Commission for further proceedings on the question of damages, but (2) stayed the administrative decision of the Commission "until a decision is rendered following a hearing for damages...." Feeling aggrieved by this quasi-Solomonic decision, Holiday has brought this appeal directly from the court's order.

Holiday makes a number of arguments, which seem to fall into two categories. Contending that the panel had no legal right to bifurcate the proceeding and reserve the issue of damages, Holiday first argues that the September Decision and Order was, in fact, a final agency decision and was appealable as such. Ignoring the effect of the court's stay, it argues also that, because of the panel's injunctive-type order directing it to take certain action, it will suffer some irreparable injury and expense unless the appeal is allowed, and that, as it intended to appeal anyway, the appeal might just as well be entertained before the parties are put to any further expense.

■ We shall begin our consideration of Holiday's contentions by recalling some of the principles laid down by the Court of Appeals in *Md. Comm'n on Human Rel. v. B.G. & E. Co.*, 296 Md. 46, 50–52, 459 A.2d 205 (1983):

> "This Court has firmly adhered to the principle that statutorily prescribed administrative and judicial remedies

must ordinarily be pursued and exhausted. This principle is not only a requirement of our case law, it is a policy embodied in various enactments of the General Assembly.

.     .     .     .     .

To exhaust administrative remedies, ordinarily a party must pursue the prescribed administrative procedure to its conclusion and await its final outcome.... Generally, a party can resort to a court only when there is a final order in the administrative proceeding.

.     .     .     .     .

This Court has frequently characterized a final order of a court as a judicial determination that concludes the rights of parties or denies them means of further prosecuting or defending their rights and interests in the subject matter of the proceedings.... Thus, this Court has established the general principle that an order of a court is final and appealable when it determines or concludes the rights of the parties and leaves nothing further for the court to do."

This is essentially, if not identically, the test for determining when a party has a final, appealable judgment. See also the statement at 296 Md. 56, 459 A.2d 205:

"[O]rdinarily the action of an administrative agency, like the order of a court, is final if it determines or concludes the rights of the parties, or if it denies the parties means of further prosecuting or defending their rights and interests in the subject matter in proceedings before the agency, thus leaving nothing further for the agency to do."

The controversy in *B.G. & E. Co.* was whether a certain personnel policy precluding the hiring of close relatives of current employees amounted to unlawful discrimination on the basis of marital status. A hearing examiner for the State Human Relations Commission concluded that the policy did not concern itself with marital status and, for that reason, the company's refusal to hire the spouse of a current employee was not a discriminatory act. In light of

that conclusion, the examiner found it unnecessary to address the secondary question of whether there was a business necessity for the policy, that question being relevant only if the policy was otherwise unlawful. An appeal board disagreed with the examiner's primary conclusion, however, finding that the anti-nepotism policy did involve discrimination based on marital status, and it remanded the case to the examiner to consider whether there was a business necessity for that policy. The company appealed that order of remand.

The Court of Appeals applied the principles quoted above in determining that the order of remand was not appealable. In so doing, however, it stressed that no final administrative decision had yet been made as to whether the company had engaged in an unlawful discriminatory act; if a business necessity for the discriminatory policy was found, the policy would not be unlawful. The Court also pointed out that the appeal board's order

> "did not command BG & E to do or refrain from doing anything; did not grant or deny any benefit to which BG & E was entitled under the law; did not subject BG & E to any liability, civil or criminal; and did not change BG & E's existing or future status. Indeed, no legal consequence of any kind flowed from the Appeal Board's order. In short, the Appeal Board's order did not determine or conclude BG & E's rights and obligations. Those rights and obligations will not be determined until there has been further agency action."

*Id.,* 57–58, 459 A.2d 205.

That is certainly not the case here. The Commission panel, by its own device, created a hybrid. It bifurcated the issues which, despite Holiday's urgings, it seemingly had a right to do; at least, we find nothing in the law precluding such a procedure. But having done that, it proceeded in its September 13 order to determine, clearly and finally, that Holiday's exclusionary policy amounted to unlawful sex discrimination and to order it, nearly forthwith, to change that policy. There is no way to read that order as constitut-

ing other than a final determination of wrongdoing and quasi-injunctive directives to desist. Unlike the *BG & E* case, Holiday's rights and obligations were indeed determined; legal consequences did indeed flow from the panel's Decision and Order.

Were such an order entered by a court, Holiday would have had several avenues of relief available to it. It could have sought a stay of the injunctive order under Md. Rule 2–632, and, if unsuccessful in that effort, could have taken an immediate appeal under Md.Code Courts art., § 12–303 (1986 Cum.Supp.), seeking interlocutory relief from either the trial court or the appellate court pending the appeal. *See General Motors Corp. v. Miller Buick, Inc.*, 56 Md. App. 374, 387–90, 467 A.2d 1064 (1983), *cert. denied* 299 Md. 136, 472 A.2d 999 (1984). While we remain firmly committed to the preclusion of premature or piecemeal appeals designed to frustrate the efficient course and completion of administrative proceedings, it would be manifestly unfair to permit an agency to make a finding of liability, direct the respondent to take quick, affirmative, expensive action, and then preclude effective judicial review by reserving judgment on a relatively minor, ancillary part of the case.[2] In essence, by couching its findings and conclusions as it did and by ordering immediate action of the type noted, the panel forced this appeal and was the author of any disruption encountered as a result.[3]

---

**2.** Damages, under the ordinance, would be limited to a maximum of $1,000 per complainant plus any out-of-pocket expenses sustained by them in attending hearings before the panel. As the complainants did not have private counsel, the Commission conceded at oral argument that there would be no occasion for an award of counsel fees in this case.

**3.** The panel could easily have achieved its purpose without creating this problem by announcing its findings and conclusions as to any violations by Holiday but withholding its decision as to remedial action until the damages question was resolved. It then could have entered a true and complete final decision and order referencing its findings and conclusions and setting forth the full measure of relief it deemed appropriate.

The Circuit Court, as we observed, recognized the problem and attempted to deal with it in a sensible way. Technically, its approach was off-the-mark, but that can be corrected.

■ A court's options in an appeal under the subtitle B Rules are set forth in Rule B 13: "The Court shall affirm, reverse or modify the action appealed from, remand the case to the agency for further proceedings, or dismiss the appeal as now or hereafter provided by law." The argument for dismissal raised in the Commission's motion to dismiss was lack of subject matter jurisdiction based on the asserted lack of a final agency order. If that argument were valid, the court would indeed have been without authority to act and it would have had no choice but to dismiss the appeal. It could not exercise a jurisdiction it did not have. *Md. Comm'n on Human Rel. v. B.G. & E. Co., supra*, 296 Md. 46, 459 A.2d 205; *Comptroller v. Myers*, 59 Md.App. 118, 474 A.2d 941 (1984). But, by staying the panel's order, that is precisely what it purported to do.

We believe that the panel's order was final and appealable, and the court therefore should not have dismissed the appeal. If it felt that judicial economy could best be served by allowing the panel to adjudicate the issue of damages before reviewing the other aspects of its decision, the court, under Rule B 13, could have stayed the injunctive orders and remanded for the further proceeding. The same result would be reached without creating jurisdictional problems.

Holiday argues that the court should not take that approach, that judicial economy would best be served if the underlying issue of liability is resolved at this juncture. We do not agree. So long as the injunctive orders are stayed, the need for further judicial review loses its urgency, and we see no reason why the panel should not be allowed to complete its work so that all issues, including any that may pertain to the panel's decision as to damages, can be reviewed in one proceeding.

In light of this conclusion, we deem it unnecessary to consider at this time Holiday's second complaint, that the court erred by failing to clarify who were the parties appellant. That can be considered when the case next comes before the Circuit Court, as it surely seems destined to do.

JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR ENTRY OF ORDER CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.