963 A.2d 773

TAMARA A.

v.

MONTGOMERY COUNTY DEPT. OF HEALTH
AND HUMAN SERVICES.

No. 39 Sept.Term, 2008.

Court of Appeals of Maryland.

Jan. 14, 2009.

182

Alan S. Albin, Morristown, NJ, for Petitioner.

Sandra Barnes, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, JJ, and JOHN C. ELDRIDGE (Retired, Specially Assigned), IRMA S. RAKER (Retired, Specially Assigned) and ALAN M. WILNER (Retired, Specially Assigned), JJ.

ALAN M. WILNER, Judge (Retired, Specially Assigned).

Maryland Code, § 10–222(a) of the State Government Article (SG), which is part of the State Administrative Procedure Act, provides, generally, that a party aggrieved by the *final decision* of a covered agency in a contested case is entitled to judicial review. Section 10–222(b) contains an exception to the "final decision" requirement. It permits immediate judicial review of an *interlocutory order* in certain enumerated circumstances. The issue before us is whether an interlocutory order by an administrative law judge (ALJ) that denied a motion to dismiss the administrative proceeding on the ground of collateral estoppel satisfied those conditions. We shall hold that it did not.

## BACKGROUND

Petitioner, Tamara A., is the mother of three young children—Nathaniel, Madeline, and Shirah. In February, 2004, shortly before Shirah was born, Judge Savage of the Circuit Court for Montgomery County, sitting as a juvenile court on a petition filed by respondent, Montgomery County Department of Health and Human Services (DHHS), found Nathaniel and Madeline to be children in need of assistance (CINA). There was a dual basis for the CINA finding as to Nathaniel. In October, 2003, out of anger or frustration, Tamara grabbed and pulled on the child's arm, fracturing his humerus. Tamara also had a history of subjecting Nathaniel to a substantial number of unnecessary medical visits, apparently from an unreasonable anxiety on her part over the child's health, which, the evidence showed, was generally good. The court found both the October episode and the unnecessary medical attention to constitute abuse.

■ The situation with Madeline was different. There was no evidence that she had ever been directly abused or subjected to excessive medical treatment. Nonetheless, relying upon several decisions of the Court of Special Appeals, the juvenile court found that Tamara's treatment of Nathaniel, coupled with evidence of her untreated depression and anger, put

Madeline at a "substantial risk of harm," and, on that basis, found her also to be a CINA.[1] The court committed the children to DHHS for placement with their maternal grandparents, where they had been living.

Shirah was born on April 14, 2004—some two months after the CINA findings with respect to Nathaniel and Madeline. Immediately upon her birth, the child was removed from Tamara's custody and placed in shelter care, and the next day DHHS filed a petition to have Shirah declared CINA.

At the May 13, 2004, hearing on the CINA petition, before Judge Boynton, DHHS elected to proceed in summary fashion. It presented no evidence other than the record of the proceeding involving Nathaniel and Madeline, of which Judge Boynton took judicial notice. Although Tamara was offered the opportunity to present evidence, she chose not to do so at the adjudicatory phase of the proceeding. After reading the transcripts of the hearings held before Judge Savage five months earlier, Judge Boynton declared that Tamara's "psychiatric or psychological or personality disorder," which led to the dual forms of abuse of Nathaniel, still existed. From that, he concluded that "there is a substantial risk that that same manifestation could occur to [Shirah]" and that Tamara was "unable and unwilling to provide for the need of this child." The judge found that:

> "[E]ven though there's been nothing, no direct harm done to Shirah, no direct action taken against her at this time, I believe that the prior pattern which was caused by the existence of conditions that have not yet been treated or changed, creates a substantial risk of harm to the child."

---

1. The principle set forth in those Court of Special Appeals decisions, and the underpinning of the CINA finding as to Madeline (and Shirah) in this case, is that, in light of the definition of "neglect" in the CINA law (Maryland Code, § 3–801(s) of the Cts. & Jud. Proc. Article), a child who is the subject of a CINA petition "need not have suffered actual harm," but may be declared CINA if "placed at substantial risk of harm," and that a child may be found to be at a substantial risk of harm if another child in the family has been harmed. *See In re Andrew A.,* 149 Md.App. 412, 418–19, 815 A.2d 931, 934 (2003) and cases cited there.

On June 9, 2004, DHHS informed Tamara that, based on an investigation by Child Protective Services, a unit within DHHS, she had been found responsible for "Indicated Child Neglect" with respect to Shirah. The consequence of that finding, if not withdrawn or modified, is that Tamara's name would go into a central registry of persons found to have abused or neglected a child. *See* Maryland Code, § 5–706.1 of the Family Law Article (FL).[2] Tamara was informed that she could appeal the finding by requesting a hearing before Office of Administrative Hearings (OAH) within 60 days, which she did.

At or about the time of the DHHS finding, Tamara noted an appeal from the three CINA determinations, and proceedings before OAH were stayed pending resolution of that appeal. In January, 2005, the Court of Special Appeals affirmed the CINA determinations. *See In re Nathaniel A.,* 160 Md.App. 581, 864 A.2d 1066 (2005), *cert. denied,* 386 Md. 181, 872 A.2d 47 (2005). With respect to Shirah, the Court of Special Appeals concluded:

> "[T]he merits of Shirah's case do not focus on whether there was actual harm to her, but rather, like Madeline's situation, based on the prior conduct of appellant, whether her new-born child is at a 'substantial risk of harm,' which would mandate that the child be removed from the parent [citations omitted]. We must determine whether appellant's 'ability to care for the needs of one child is probative of [her] ability to care for other children in the family' [citation omitted]. The child may be considered 'neglected' before actual harm occurs, as long as there is 'fear of harm' in the future based on 'hard evidence' and not merely a 'gut reaction' [citation omitted]."

*Id,* at 601, 864 A.2d 1066.

When eventually informed of the appellate decision, OAH lifted the stay and scheduled a hearing for March 22, 2006.

---

**2.** At oral argument before us, DHHS acknowledged that, by reason of the CINA findings regarding Nathaniel and Madeline, Tamara was already listed in the registry. How and when that occurred is not clear.

On March 10, DHHS filed a motion to dismiss the appeal based on collateral estoppel. DHHS noted that the parties before OAH were also parties in the CINA case and argued that (1) the CINA determination was based on the same evidence that would support the finding of "indicated child neglect," (2) the issue of neglect was "litigated and determined by a valid, final judgment," and (3) Tamara was therefore "collaterally estopped from re-litigating the issue in the present case." With the motion to dismiss, DHHS moved to limit the March 22 hearing to consideration of its collateral estoppel defense; that motion was granted.

After reviewing the record, the ALJ concluded that, although the parties in the instant proceeding were also parties in the CINA case and that the CINA finding constituted a final judgment with respect to that litigation, thus satisfying two of the elements of collateral estoppel, the facts decided in that litigation were not the same as those presented in the administrative proceeding. She noted that the CINA finding as to Shirah was based solely on the potential for harm inferable from what occurred with respect to Nathaniel, not on any actual neglect of Shirah, but, notwithstanding that the definition of "neglect" for purposes of the instant proceeding was the same as for the CINA case,[3] she found that entry into the registry had to be based on some actual abuse or neglect, not merely the potential for it. Upon that analysis, the ALJ denied the motion.

Considering itself aggrieved by that ruling. DHHS filed a petition for immediate judicial review in the Circuit Court for Montgomery County. Tamara did not contest DHHS's right to immediate judicial review of the order—indeed, she conceded that right—but nonetheless moved to dismiss the petition on the ground that the ALJ's decision was correct and there was no basis for overturning it.[4] The court agreed with

---

3. *See* FL § 5–701(s) and *compare* Cts. & Jud. Proc. Article, § 3–801(s).

4. In her motion to dismiss the judicial review action, Tamara agreed that DHHS "has a right to judicial review of the OAH decision in the

Tamara, but instead of dismissing the petition, it affirmed the ruling, which had the same effect of placing the matter back before the ALJ to resolve the merits of Tamara's challenge.

DHHS appealed. In a reported opinion, the Court of Special Appeals concluded (1) that the ALJ's ruling on the DHHS motion to dismiss satisfied the requirements of SG § 10–222(b) for immediate judicial review, and (2) that the collateral estoppel defense raised by DHHS was valid and that the ALJ erred in not dismissing the proceeding. *Montgomery County v. Tamara A.*, 178 Md.App. 686, 943 A.2d 653 (2008). We granted Tamara's petition for *certiorari* to consider whether the Court of Special Appeals erred in its determination that judicial review was immediately available with respect to the ALJ's interlocutory ruling on DHHS's motion to dismiss. We disagree with the intermediate appellate court's analysis and conclusion on that issue and shall direct that the judicial review action be dismissed and that the case be remanded to OAH for resolution of the merits of Tamara's complaint.

## DISCUSSION

■■■ The sole issue presented in the petition for *certiorari* is whether the denial of DHHS's motion to dismiss was subject to immediate judicial review under SG § 10–222(b). We are not concerned here with whether the ALJ's decision was correct. Indeed, Tamara's argument is that the Court of Special Appeals erred in addressing that issue, as it was not properly before either the Circuit Court or the Court of Special Appeals.[5]

-----

above captioned matter," but averred that the OAH decision "is neither clearly erroneous nor an abuse of discretion." The motion added that "while there is a basis for the Appeal there is absolutely no basis or foundation legal or factual for overturning the OAH decision." Tamara's defense, in other words, went directly to the correctness of the ALJ's decision, not to whether DHHS had the right to seek immediate review of it.

5. In the Circuit Court, as noted, Tamara conceded that DHHS had a right of immediate judicial review. That issue, which goes to the

SG § 10–222(b) permits immediate judicial review of an interlocutory administrative order in a contested case only if certain enumerated requirements are met. To be entitled to such immediate review, an aggrieved party must show five things:

(1) The administrative official who entered the order had final decision-making authority;

(2) The party would qualify for judicial review of any related final decision;

(3) The interlocutory order determines rights and liabilities;

(4) The order has immediate legal consequences; and

(5) Postponement of judicial review would result in irreparable harm.

We are not concerned here with the first two requirements. It is undisputed that the ALJ who denied the DHHS motion to dismiss had final decision-making authority with respect to the administrative proceeding and that DHHS, if aggrieved by it, would qualify for judicial review of any final decision made by the ALJ. Our disagreement with the Court of Special Appeals lies in our conclusion that the last three requirements have not been satisfied.

---

requirement that a party must exhaust available administrative remedies before commencing judicial action, is not one that may be effectively conceded. For one thing, it is an issue of law, not of fact, and a court is not bound by a party's concession of a point of law. *Greenstreet v. State*, 392 Md. 652, 667, 898 A.2d 961, 970 (2006). More important, as this Court has made clear on several occasions:

"While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated *like* a jurisdictional question. Consequently, issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party."

*Bd. of Ed. for Dorchester Co. v. Hubbard*, 305 Md. 774, 787, 506 A.2d 625, 631 (1986). *See also Furnitureland v. Comptroller*, 364 Md. 126, 132, 771 A.2d 1061, 1065 (2001).

This Court has been strict in disallowing appeals from interlocutory orders unless expressly authorized by statute, permitted under the limited discretion provided for in Md. Rule 2–602(b), or allowed pursuant to the collateral order doctrine, which we have construed very narrowly. *See St. Joseph Medical Center v. Cardiac Surgery Associates*, 392 Md. 75, 84–85, 896 A.2d 304, 309–10 (2006); *Ehrlich v. Grove*, 396 Md. 550, 562–63, 914 A.2d 783, 791–92 (2007); *Pittsburgh Corning v. James*, 353 Md. 657, 660–61, 728 A.2d 210, 211–12 (1999). We have applied a similar strictness to actions for immediate judicial review of interlocutory administrative orders. *See State Commission v. Freedom Express*, 375 Md. 2, 16, 825 A.2d 354, 362 (2003); *Board of License Com'rs. v. Corridor Wine*, 361 Md. 403, 417–18, 761 A.2d 916, 923–24 (2000); *Driggs Corp. v. Md. Aviation*, 348 Md. 389, 407, 704 A.2d 433, 442 (1998). The underlying rationale for that strictness is the same in both instances. In the judicial review context, we observed:

"The salutary purpose of the finality requirement is to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions. Not only would a contrary rule create the real prospect of unnecessary litigation, as a party choosing to seek review of an unfavorable interlocutory order might well, if the party waited to the end, be satisfied with the final administrative decision, but the wholesale exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns."

*Driggs Corp.*, 348 Md. at 407, 704 A.2d at 443.

In *Holiday Spas v. Montgomery County*, 315 Md. 390, 554 A.2d 1197 (1989), this Court recognized a very limited exception to the finality requirement with respect to judicial review of an administrative agency order. The law then applicable to the case, which emanated from Montgomery County and did not involve the State Administrative Procedure Act, permitted a person aggrieved by the final decision in a contested case to seek judicial review. There was no counterpart in the county law (or, at the time, in the State APA) to current SG § 10–

222(b). In *Holiday Spas,* the agency found that the respondent had engaged in unlawful gender discrimination and ordered it, within ten days, to cease that discrimination and to alter its operations in order to do so, but reserved for further determination the complainants' claim for damages. Aggrieved not only by the decision but also its instant and irreparable impact, the respondent sought immediate judicial review of the interlocutory agency order.

Notwithstanding the statutory requirement of a "final decision," the Court adopted the view of the Court of Special Appeals in that case *(Holiday Spas v. Human Relations Comm'n,* 70 Md.App. 344, 521 A.2d 340 (1987)) and a number of Federal courts that a form of finality can attach to an agency order that imposes on a party an immediate impact similar to that of an injunction, even if that order does not terminate the administrative proceeding. The Court quoted favorably from *Isbrandtsen Co. v. United States,* 211 F.2d 51, 55 (D.C.Cir.), *cert. denied,* 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954):

> "The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow...."

Four years after *Holiday Spas,* SG § 10–222(b) was enacted as part of an overall revision of the contested case provisions of the Administrative Procedure Act. The Drafter's Note to § 10–222(b) states that it was intended to codify the Court of Appeals decision in *Holiday Spas. See* 1993 Md. Laws, ch. 59, at 1037. The section, and, in particular, the last three criteria, must therefore be read in conformance with the narrow window permitted under *Holiday Spas.*

DHHS maintains that it had a right to rely on the finding of neglect made by the juvenile court in the CINA action and thus to avoid having to relitigate that issue. It acknowledges our holding in *Shoemaker v. Smith,* 353 Md. 143, 169–70, 725

A.2d 549, (1999) that "the idea that an issue is not effectively reviewable after the termination of trial because it involves a 'right' to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations," but urges that its collateral estoppel defense is the equivalent of a double jeopardy claim or other "extraordinary situation." We disagree.

Although *Shoemaker v. Smith* involved an appeal under the collateral order doctrine, rather than an action for judicial review of an interlocutory administrative order, the case is very much in point, precisely because the rationale for not allowing interlocutory review is the same in both instances. *Shoemaker* confirmed two earlier holdings—in *Bunting v. State*, 312 Md. 472, 480, 540 A.2d 805, 808 (1988) and in *Artis v. Cyphers*, 100 Md.App. 633, 642 A.2d 298 (1994), *affirmed for reasons stated by Court of Special Appeals in Artis v. Cyphers*, 336 Md. 561, 649 A.2d 838 (1994).

In *Bunting*, the Court dismissed an appeal from an order denying a motion to dismiss criminal charges because of a violation of the "single transfer" rule embodied in the Interstate Agreement on Detainers, which the defendant regarded as a right not to be tried, like double jeopardy. In *Artis* and in *Shoemaker* we dismissed an appeal from the denial of a motion for summary judgment based on qualified immunity. The sum and substance of our holdings under the collateral order doctrine are that the right to an immediate appeal from an interlocutory order denying a motion to terminate the proceeding, founded on a right to avoid having to litigate the issues raised by the complainant, is a limited one. In the criminal context, it is limited to the defense of double jeopardy, and in the civil context, it is limited, at best, to an immunity that can be resolved as a pure issue of law, without the court having to assume any material facts or inferences that are in dispute. *Shoemaker, supra*, 353 Md. at 170, 725 A.2d at 563. Indeed, in *Dawkins v. Baltimore Police Dept.*, 376 Md. 53, 65, 827 A.2d 115, 122 (2003), we held that:

"As a general rule, interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, are not appealable under the Maryland collateral order doctrine."

██ Although we have not had the occasion to consider, either under the collateral order doctrine or under SG § 10–222(b), whether immediate review will lie from an order denying a motion to terminate a proceeding based on collateral estoppel or *res judicata,* the U.S. Supreme Court recently decided that issue. In *Will v. Hallock,* 546 U.S. 345, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006), the Court, in a unanimous opinion, held that the denial of a motion to dismiss based on the bar of an existing judgment, whether the bar is statutory in nature or under common law *res judicata* principles, is not subject to immediate appeal under the collateral order doctrine, as applied in the Federal courts.

The action in *Will* was a *Bivens* claim against Federal customs agents.[6] The plaintiffs previously filed a claim against the Government under the Federal Tort Claims Act based largely on the same facts, and, when the court dismissed that action on the ground that the agents' activities fell within an exception to the Tort Claims Act's waiver of sovereign immunity, the defendant agents moved to dismiss the *Bivens* action. The District Court denied the motion, the agents appealed, and the U.S. Court of Appeals affirmed. The Supreme Court vacated the appellate judgment, concluding that the District Court order was not subject to immediate appeal.

Analogizing the statutory judgment bar emanating from the Tort Claims Act to the defense of *res judicata,* the Court noted that neither "reflect[ed] a policy that a defendant should be scot free of any liability," but only the avoidance of duplicative litigation. *Id.* at 354, 126 S.Ct. at 960, 163 L.Ed.2d

---

**6.** *See Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

at 848. The Court concluded, however, that "this rule of respecting a prior judgment by giving a defense against relitigation has not been thought to protect values so great that only immediate appeals can effectively vindicate them." *Id.* Confirming an implication from its earlier decision in *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), the Court held that:

> "The judgment bar at issue in this case has no claim to greater importance than the typical defense of claim preclusion, and we hold true to form in deciding what *Digital Equipment* implied, that an order rejecting the defense of judgment bar under 28 U.S.C. § 2676 cries for no immediate appeal of right as a collateral order."

*Will v. Hallock, supra,* 546 U.S. at 355, 126 S.Ct. at 960–61, 163 L.Ed.2d at 848.[7]

The reasoning in *Will* is compelling, and we adopt it and the natural conclusion from it. That approach is entirely consistent with the language of SG § 10–222(b) itself, especially

---

7. *Digital Equipment* was, indeed, a harbinger. The Court there held, unanimously, that a trial court's grant of the plaintiff's motion to vacate a voluntary dismissal and rescind a settlement agreement due to misrepresentations by the defendant, which restored the case, was not subject to immediate appeal under the collateral order doctrine. Addressing the same argument made by DHHS here—that the effect of the settlement agreement and voluntary dismissal was a right not to have to stand trial—the Court observed that calling the interest a "right not to stand trial" was of little consequence, as "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Digital Equipment,* 511 U.S. at 873, 114 S.Ct. at 1998, 128 L.Ed.2d at 852. It continued:

> "Allowing immediate appeals to vindicate every such right would move [28 U.S.C.] § 1291 [the Federal counterpart to the final judgment requirement in Maryland Code, § 12–301 of the Cts. & Jud. Proc. Article] aside for claims that the district court lacks personal jurisdiction [citations omitted], that the statute of limitations has run [citation omitted], that the movant has been denied his Sixth Amendment right to a speedy trial [citation omitted], *that an action is barred on claim preclusion principles,* that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim. Such motions can be made in virtually every case...." *Id.* (Emphasis added).

when read in light of *Holiday Spas.* The ruling here did not determine any rights or liabilities of the parties, but merely kept alive the statutory right that Tamara had to have DHHS's determination of indicated child neglect reviewed by an ALJ; nor did it have any immediate legal consequences. The parties remained in the same *legal position and status* they occupied when DHHS made its finding and Tamara noted her appeal. At that point, DHHS bore the burden of proving to the ALJ that Tamara had neglected Shirah. CO-MAR 07.02.26.12B.

Moreover, we fail to see how postponement of judicial review would cause any irreparable harm to DHHS. Indeed, although the correctness of the ALJ's decision is not presently before us, the statutory construct itself suggests that an appeal of a finding of indicated child abuse or neglect is not necessarily precluded by a CINA determination. FL § 5–706.1(a) requires DHHS to notify the individual alleged to have abused or neglected a child of its finding and of the opportunity to appeal the finding.

█ FL § § 5–706.1(b)(3) and (4) require OAH to stay a hearing in such an appeal if either criminal charges based on the alleged abuse or neglect or a CINA proceeding is pending, until any such proceeding is concluded. If the individual is found guilty of criminal charges arising out of the alleged abuse or neglect, OAH must dismiss the administrative appeal. FL § 5–706.1(b)(3)(ii). Conviction, in other words, *does* act as an absolute statutory bar to further prosecution of the administrative appeal. That is not the case with respect to a CINA proceeding, however. In sharp contrast, § 5–706.1(b)(4)(ii) provides that "[a]fter the conclusion of the CINA case, the [OAH] shall vacate the stay and schedule further proceedings in accordance with this section." [8] Although that provision does not necessarily preclude a collateral estoppel defense in a proper case, it certainly does not

---

**8.** Regulations of the Social Services Administration of the State Department of Human Resources echo that statutory directive. *See* COMAR 07.02.26.07.

support DHHS's argument that the administrative proceeding must be put on indefinite hold in favor of immediate judicial review if such a defense is rejected by the ALJ.[9]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE PETITION FOR JUDICIAL REVIEW AND REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS. COSTS IN THE COURT OF SPECIAL APPEALS AND THIS COURT TO BE PAID BY RESPONDENT.

Concurring opinion by ELDRIDGE, J., which BELL, C.J., BATTAGLIA and J., join.

ELDRIDGE, Judge, concurring.

I agree with the Court's judgment and with its holding set forth in the first paragraph of the opinion. I do not agree, however, with the Court's equating actions for judicial review of administrative decisions with appeals from trial courts to appellate courts. More specifically, I do not believe that the criteria for allowing interlocutory appeals under the collateral order doctrine are "similar" (majority slip opinion at 8) to the

---

**9.** The only end product of the administrative proceeding is either entry of Tamara's name in the central registry, if the finding of indicated neglect is sustained, or modification of the finding and expungement of references to Tamara as responsible for neglect, if the finding is not sustained. To the extent that delay in either result is of concern, we would remind DHHS that, upon notice that the CINA case had terminated, OAH scheduled a hearing on the merits for March 22, 2006. Regulations of the Social Services Administration require that a decision by the ALJ be rendered within 45 days after the hearing. *See* COMAR 07.02.26.14A. Had DHHS not caused that scheduled hearing to be converted to a hearing only on its collateral estoppel defense and then insisted on immediate judicial review when its motion was denied, the case would likely have been resolved on the merits by the middle of May, 2006.

extremely limited situation where judicial review of a non-final administrative decision is permitted under Maryland administrative law generally, as well as under the Administrative Procedure Act, Maryland Code (1984, 2004 Replacement Volume, 2008 Supp.), § 10–222(b) of the State Government Article.

Prior to the decision in *Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A.2d 521 (1975), both this Court's opinions and numerous statutes regularly treated circuit court actions for judicial review of adjudicatory administrative decisions as "appeals," and some cases erroneously applied the same principles to such actions as were applied to appeals from courts of limited jurisdiction to circuit courts. *See* the discussions in *Board of License Commissioners v. Corridor,* 361 Md. 403, 412–415, 761 A.2d 916, 920–921 (2000); *Colao v. County Council,* 346 Md. 342, 359–364, 697 A.2d 96, 104–107 (1997); *Gisriel v. Ocean City Elections Board of Sup'rs,* 345 Md. 477, 493–496, 693 A.2d 757, 765–767 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998).

Consequently, in light of the earlier confusion regarding the nature of actions for judicial review of adjudicatory administrative decisions, this Court in recent years has underscored the differences between such actions and appeals from trial courts to appellate courts. For example, in *Kim v. Comptroller,* 350 Md. 527, 714 A.2d 176 (1998), where the circuit court and one of the parties had treated the period of limitations for bringing a judicial review action the same as the jurisdictional time limit for taking an appeal from a trial court to an appellate court, we stated (350 Md. at 534–536, 714 A.2d at 179–180, emphasis in original):

"Both the circuit court and the Comptroller improperly relied upon decisions dealing with the effect of the premature filing of an appeal. Although often misinterpreted to be an appeal, this Court has repeatedly emphasized that an action for judicial review of an administrative decision is an *original* action. It is *not* an appeal."

\* \* \*

"Because judicial review is an original action and not an appeal, the Comptroller's and the circuit court's reliance on cases dealing with the premature filing of appeals was inappropriate. The time requirements for filing appeals are ordinarily treated as jurisdictional in nature.

\* \* \*

"The same cannot be said, however, of a prematurely filed petition for judicial review, because the time requirements for filing a petition for judicial review are not jurisdictional. It is in the nature of a statute of limitations."

*See also, e.g., Kant v. Montgomery County*, 365 Md. 269, 274, 778 A.2d 384, 386–387 (2001); *Board of License Commissioners v. Corridor, supra,* 361 Md. at 413–415, 761 A.2d at 921–922; *Prince George's County v. Beretta,* 358 Md. 166, 169, 747 A.2d 647, 648 (2000); *Colao v. County Council, supra,* 346 Md. at 359–364, 697 A.2d at 104–107; *Gisriel v. Ocean City Elections Board, supra,* 345 Md. at 493–496, 693 A.2d at 765–767.

In *Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 825 A.2d 388 (2003), this Court held that a decision by the highest administrative body (a county Board of Appeals), remanding the case to a lower administrative body, was not subject to judicial review because there was no final *administrative* decision. Specifically addressing the analogy to appeals from trial courts, we stated *(Dorsey,* 375 Md. at 77 n. 3, 825 A.2d at 398 n. 3):

"Courts in some jurisdictions have analogized judicial review of administrative agency decisions to appellate court review of trial court decisions, and have seemed to hold that, if a particular type of trial court decision would be appealable to an appellate court, the same type of decision by the highest unit in an administrative agency would be subject to judicial review. *See, e.g., Meredith v. Federal Mine Safety and Health Review Commission,* 177 F.3d 1042, 1050–1051 (D.C.Cir.1999).

"Such analogy would not be appropriate under Maryland law."

I have no disagreement with the Court's view that the collateral order doctrine in Maryland is "construed very narrowly" (majority opinion at 189, 963 A.2d at 778), and that a trial court's denial of a motion to dismiss, based on collateral estoppel or res judicata grounds, is not appealable under the collateral order doctrine. Nevertheless, I do not believe that the criteria for allowing appeals under the collateral order doctrine are particularly relevant in determining whether a non-final administrative decision is subject to judicial review.[1] Some interlocutory trial court orders may be immediately appealable under the collateral order doctrine, whereas similar non-final orders by an administrative agency would not be immediately subject to judicial review. *See, e.g.,* the order in *Clark v. Elza,* 286 Md. 208, 406 A.2d 922 (1979).

Section 10–222(a) and (b) of the State Government Article provides in pertinent part as follows:

" § 10–222. Judicial review.

(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section."

\* \* \*

"(b) *Review of interlocutory order.*—Where the presiding officer has final decision-making authority, a person in a contested case who is aggrieved by an interlocutory order is entitled to judicial review if:

(1) the party would qualify under this section for judicial review of any related final decision;

(2) the interlocutory order:

(i) determines rights and liabilities; and

(ii) has immediate legal consequences; and

---

1. With regard to the criteria for allowing appeals under the collateral order doctrine, *see, e.g., Dawkins v. Baltimore Police,* 376 Md. 53, 58–59, 827 A.2d 115, 118 (2003); *In re Foley,* 373 Md. 627, 633–634, 820 A.2d 587, 591, *cert. denied sub nom. Foley v. Berg,* 540 U.S. 948, 124 S.Ct. 398, 157 L.Ed.2d 279 (2003); *Pittsburgh Corning v. James,* 353 Md. 657, 661, 728 A.2d 210, 211–212 (1999), and cases there cited.

(3) postponement of judicial review would result in irreparable harm."

Section 10–222(b) was first enacted as part of Ch. 59 of the Acts of 1993 which extensively revised the Maryland Administrative Procedure Act. Immediately following the new subsection 10–222(b) in Ch. 59 was the following (1993 Laws of Maryland at 1037):

"DRAFTER'S NOTE: Subsection (b) is intended to codify the Court of Appeals decision in *Holiday Spas v. Montgomery County Human Relations Commission*, 315 Md. 390, 554 A.2d 1197 (1989)."

*Holiday Spas v. Montgomery County*, 315 Md. 390, 554 A.2d 1197 (1989), was an action for judicial review, under the Montgomery County Code, of an order by the Montgomery County Commission on Human Relations. The Commission found that Holiday Spas had engaged in unlawful gender discrimination, and the Commission required Holiday Spas "to post immediately" a certain "notice in its facilities," to change within 10 days the nature of its business to cure some aspects of the alleged gender discrimination, and later to submit to the Commission a plan "detailing its method of compliance." *Holiday Spas v. Montgomery County, supra*, 315 Md. at 394, 554 A.2d at 1199. The Commission's order was not actually final, however, because the Commission postponed the matter of damages which several complainants sought to recover from Holiday. While pointing out that, generally, "an action for judicial review of an administrative order will lie only if the administrative order is final," this Court held that the Commission's order should be "deemed final for purposes of judicial review because it operates like an injunction and will result in irreparable injury." *Holiday Spas*, 315 Md. at 395, 401, 554 A.2d at 1199, 1202. The Court emphasized that the "order did not merely determine liability but, in addition, required Holiday ... to alter its practices almost at once." *Holiday Spas*, 315 Md. at 399, 554 A.2d at 1201.

Section 10–222(b) of the Administrative Procedure Act was "intended to codify the ... decision in *Holiday Spas*" (1993

Laws of Maryland at 1037), and the statutory provision should not be extended beyond the type of situation involved in *Holiday Spas.* The statute is limited to circumstances where the interlocutory administrative order is like an injunction or a cease and desist order, having "immediate legal consequences," and where postponement of judicial review "would result in irreparable harm." As the Court's opinion correctly holds, the order in the present case does not meet that standard.

Chief Judge BELL and Judge BATTAGLIA join this concurring opinion.